# Alabama Great Southern Railroad Co. v. Dobbs.

*Action against Railroad Company to recover Damages for Killing Child.*

1. *Bill of exceptions; return to certiorari.*—Where there is a difference between a bill of exceptions sent up as a return to a writ of *certiorari* and the transcript of the cause as originally filed, the former must be regarded as the true and correct record.

2. *Same; document or paper made part thereof by reference.*—When a document or paper is sought to be made a part of a bill of exceptions by reference and without copying it, it must be so accurately described by identifying features that the transcribing officer can, unaided by memory, readily and with certainty determine what document or paper is referred to, without room for mistake.

3. *Same.*—Where, in a file of papers in a cause there is a showing for a continuance on account of the absence of a witness, Hickman, which showing contains the title of the cause, a statement of the reasons of the witness's absence, of what he would testify if present, and it does not appear that there was any other witness in the cause by the name of Hickman, the clerk properly fills a blank left in a bill of exceptions by copying this showing therein immediately after the statement and direction that "the defendant then offered the admissions of what the witness, Hickman and others would swear if present. (These admissions are with the file of papers in the circuit clerk's office, and the clerk will set them out.)" By such reference and direction the paper containing the showing was sufficiently identified to leave no room for mistake.

4. *Same; charges copied by reference.*—Where a bill of exceptions recited that the court gave the following written charges at request of plaintiff, to the giving of each of which defendant "made separate objection, * * * and the clerk will set out each of said charges ;" and that defendant requested the court to give the following written instructions to the jury, each of which the court refused to give, to which refusal defendant made separate exception, and "the clerk will here set out said charges," the clerk properly copied in the transcript all the charges asked by plaintiff and defendant on which were written the words "given" and "refused" and the signature of the presiding judge in the latter's handwriting. Such charges were sufficiently identified, since under the statute (Code, §2756), they became a part of the record when thus endorsed by the presiding judge.

5. *Parent and child; contributory negligence.*—A parent who lives within 50 feet of a railroad, along which trains pass several times a day, and who permits his child of tender years to play by itself in his yard, with no one to attend or nurse it and keep it from going upon the track of the railroad, when he knows a train is soon to pass, is guilty of such negligence as will preclude him from recovering damages from the railroad company for killing his child which had gone upon its track, unless the railroad company is guilty of more than simple negligence.

6. *Negligence; when question for the jury.*—In an action against a railroad company by parent for alleged negligent killing of his child, the question whether the engineer on the train causing the injury promptly used all available appliances, after seeing the child on the track, to stop the train before reaching it, is one for the jury, when the evidence is in conflict, or furnishes ground for conflicting inferences.

7. *Action against railroad company for negligent killing; when special plea sets up complete defense.*—In an action by parent against a railroad company for alleged negligent killing of his child, a complete defense is set up by a special plea which avers that the accident did not occur at a public crossing, that the engineer in charge of the locomotive at the time of the injury was a skillful and careful man, who was, at the time of and before the accident, keeping a vigilant and proper lookout,

[Alabama Great Southern Railroad Co. v. Dobbs.]

and doing all things required by law to avoid an injury to person or property, that the engine was supplied with all the improvements and appliances to secure safety in its operation and to avoid injury, that the cars of the train had all necessary appliances, and were manned with a sufficient number of skillful and careful brakemen, and that the child could not, by proper and vigilant lookout, have been seen until it came upon the track so suddenly and in such close proximity to the engine that the employment of all means known to skillful and careful engineers could not have avoided the injury.

8. *Same.*—In an action against a railroad company for killing plaintiff's child, where one count of the complaint assigns as the actionable negligence that the engineer of the defendant did not use all the means within his power, known to skillful and careful engineers, to stop the train after the discovery of the child upon the track, a plea to such count that avers that the child came upon the track so suddenly and in such close proximity to the engine that the employment of all means in the power of the engineer, known to careful and skillful engineers, could not have avoided the injury, that the engine and cars were supplied with all necessary improvements and machinery and were sufficiently manned, and that defendant's employés were, at the time, keeping a vigilant lookout and could not have discovered the child before it came upon the track, presents a complete defense, and is not demurrable.

9. *Same.*—Where, in such action, the negligence complained of in one count was that the defendant failed to provide proper brakes and appliances for stopping the train, a complete defense is presented by a plea that avers that, at the time of the accident, the engine and cars had all the appliances and machinery known to skillful engineers and railroad operators, and were properly manned, that the child was discovered as soon as possible while keeping a vigilant lookout, and that every thing in the power of skillful engineers and brakemen was done to avoid the injury after the child was discovered.

10. *Same.*—In an action by a parent for the alleged negligent killing of his child, where one of the counts of the complaint bases the actionable negligence of the defendant on the failure of the engineer to blow his whistle or ring the bell before entering or leaving a station on the road of the defendant, a quarter of a mile from the place of the accident, no defense to such count is presented by pleas, which aver that the child came on the track in such close proximity to the engine that the injury could not have been avoided by the employment of all means in the power of the engineer, although the engine and train had all necessary appliances known to skillful engineers and railroad operators, were properly manned, and every thing possible was done to avoid the injury after the child was discovered.

11. *Same.*—Such pleas constitute a sufficient answer to a count in the complaint which avers "that said killing was caused by the negligence of the defendant's employés in the management or running of said train of cars."

[Alabama Great Southern Railroad Co. v. Dobbs.]

12. *Error without injury; benefit of defense under general issue.*—Although the court may have committed error in sustaining demurrers to a special plea, it is error without injury, if the defendant had the benefit of the same facts as a defense under the plea of the general issue.

13. *Argumentative charges.*—Argumentative charges should be refused ; but the giving of such charges is not reversible error.

14. *Charges to the jury.*—In an action by a parent against a railroad company for killing his child, if based on the tendency of the evidence adduced, it is a proper instruction to the jury to charge them that, "If the engineer did all in his power to avert the accident, but any one of the brakemen was negligent in the discharge of his duties, then the negligence of such brakeman is by law attributed to defendant; and if the jury further find that such negligence proximately caused the injury complained of, then the jury should find a verdict for plaintiff, unless they further find that the plaintiff has been guilty of contributory negligence."

15. *General affirmative charge.*—General affirmative charges should never be given when there is conflict in the evidence.

16. *Charge defining negligence.*—In an action against a railroad company for alleged negligent killing of plaintiff's child, a charge that defines negligence as consisting "either in doing what a man of ordinary intelligence, care and prudence ought not to do, or in omitting to do what a man of ordinary intelligence, care and prudence ought to have done," and then instructs the jury that "if the plaintiff was guilty of either of these kinds of negligence and thereby contributed proximately to produce the injuries" complained of, the jury ought to find a verdict for the defendant, is erroneous, in ignoring the consideration of willful, wanton or intentional negligence on the part of defendant's employés, and is properly refused.

17. *Charge as to contributory negligence.*—In an action against a railroad company to recover damages for personal injuries, it is proper to refuse a charge which instructs the jury that, "If the plaintiff by ordinary care could and would have avoided the injury of which he complains of, and if by his failure to exercise such ordinary care he contributed proximately to produce the injury of which he here complains, then, upon this state of facts, the jury ought to find a verdict for the defendant, although they may believe all the evidence as to any alleged negligence of the conductor, engineer or brakeman." Such charge ignores the consideration of any willful, wanton or intentional negligence by the defendant.

18. *Charge as to duty of plaintiff, in an action against a railroad.*—In an action against a railroad company, for the alleged negligent killing of plaintiff's child, the court properly refused a charge which instructed the jury that the law required the plaintiff to observe such prudent care in protecting his child and keeping it from going into dangerous places, as a reasonably prudent man would observe under like circumstances, and if the plaintiff did not observe such care, and

"such omissions of care contributed in the slightest degree to the injury of the child, then, in such case, the verdict of the jury must be for the defendant, although the defendant may have been guilty of simple negligence." Such instruction ignores the consideration of willful, wanton or intentional negligence, and makes the slightest degree of negligence on the part of the plaintiff the equivalent of contributory negligence.

19. *Same.*—In such an action a charge is properly refused that instructs the jury that, if the evidence of the plaintiff raises a presumption that he was guilty of such acts of negligence in the care of his child as contributed in any degree to its injuries, "then, the burden of proof is upon the plaintiff to show he was not guilty of such negligence as contributed in the slightest degree to the injury of the child, and if the jury are reasonably satisfied the plaintiff has not done this, then the verdict must be for the defendant, although the jury may believe the defendant was guilty of simple negligence." Such charge not only ignores the consideration of any willful, wanton or intentional negligence, but erroneously defines contributory negligence.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. JOHN B. TALLY.

This was an action brought by the appellee, W.M. Dobbs, against the Alabama Great Southern Railroad Company, to recover damages for the alleged negligent killing of the plaintiff's child by one of the defendant's trains.

As originally filed the complaint contained six counts. Two others were afterwards added by amendment. The first count attributed the death of the plaintiff's child to the wanton, reckless and intentional negligence of the defendant's employés. In the second count the plaintiff alleges that the accident occurred just below a public crossing, and that on approaching said crossing the engineer did not blow the whistle or ring the bell, as was required by statute. In the third count the negligence complained of was that the engineer did not use all the means within his power, known to skillful and careful engineers, to stop the train after the discovery of the child upon the track. In the fourth count plaintiff sought to recover on account of the negligence of the defendant in failing to provide proper brakes and appliances for stopping the train. In the fifth, after alleging that the accident occurred about one-fourth of a mile from Fort Payne, a station on defendant's road, the negligence alleged was that the engineer did not blow his whistle or ring the bell before leaving Fort Payne. In

the sixth count the negligence alleged was that the engineer did not blow his whistle or ring the bell before entering or leaving Fort Payne.

The complaint was amended by adding the 7th and 8th counts. The 7th count, after alleging that the accident occurred near the south boundary of the town of Fort Payne, "at a point where the track of said railroad ran parallel to and within five or ten feet of the public highway," averred that the child was killed because "the engineer did not blow the whistle or ring the bell at short intervals on entering into or while nearing, within or passing through said town of Fort Payne." In the 8th count the plaintiff averred that said killing was the result of the negligence of the defendant's employés, in the management or running of said locomotive, train or cars. The defendant demurred to the 7th and 8th counts, on the grounds, first, that the cause of action complained of therein was a departure from the original cause; and, second, that said cause of action was barred by the statute of limitations of one year. This demurrer was overruled.

The defendant filed several pleas to the complaint. The first was the general issue to the complaint as a whole, and to each count separately. By the second plea the defendant set up that the accident did not occur at a public crossing; that at the time of the injury complained of the engineer in charge of the locomotive was a skillful and careful man; that said engine was of modern pattern and had all the improvements and appliances used on locomotives to secure safety in their operation and to avoid injury; that the cars constituting the train had all necessary and sufficient appliances, and had a sufficient number of careful and skillful brakemen to control said train; that up to the time and before the accident the engineer was keeping a proper and vigilant lookout, and doing all things required by law to avoid injury to any person or property; that the said child, by proper and vigilant lookout, could not have been seen until it came upon the track so suddenly and in such close proximity to the engine that the employment of all means known to skillful and careful engineers could not have avoided the injury. As a defense to the third count of the complaint, the defendant, in its 3d plea, alleged that the child came upon the track so suddenly and in such

[Alabama Great Southern Railroad Co. v. Dobbs.]

close promixity to the engine, that the use and employment of all means in the power of the engineer, known to careful, and skillful engineers, could not have avoided the injury; and that said locomotive and cars were supplied with all necessary appliances and machinery, and were sufficiently manned; and that the defendant's employés were, at the time, keeping a vigilant lookout for obstructions on the track, and could not have discovered the child before it came upon the track.

For answer to the fourth count, the defendant, in plea No. 4, alleged that at the time of the accident the locomotive and cars had all the appliances and machinery known to skillful engineers and operators of railroads to avoid injury to persons or property; that said locomotive and train were under the control and management of a skillful and careful engineer, and of careful and skillful brakemen, and sufficient in number; and that at the time of the accident the engineer was keeping a proper and vigilant lookout for obstructions upon the track, and that as soon as said child was discovered (and it was discovered as soon as legal diligence could have discovered it,) the engineer reversed the engine, applied the brakes, and the brakemen applied the brakes on the cars, and did all things in their power, known to skillful engineers and brakemen, to avoid the said injury. For answer to the fifth count the defendant, by plea No. 5, set up that the engineer in charge of the train blew the whistle and rang the bell at least one-fourth of a mile before reaching the public crossing mentioned in said complaint, and before reaching the station at Fort Payne, and continued to ring the bell at intervals until he passed said crossing. For further answer to the fifth count of the complaint the defendant, in plea No. 6, set up that the engineer in charge of the engine and train blew the whistle and rang the bell immediately before and at the time of leaving the depot at Fort Payne.

By plea No. 7 the defendant set up in answer to the sixth count of the complaint that the engineer in charge of the train blew the whistle and rang the bell at short intervals while moving within and passing through the town of Fort Payne.

The eighth plea of the defendant, which was interposed as an answer to the second, third, fourth, fifth and sixth counts of the complaint, averred, "That the plain-

tiff ought not to have and maintain this suit, because, at and before the time of the occurrence of the injury mentioned in the complaint, the child alleged to be injured was in the care, custody and under the control of plaintiff as its father, and plaintiff was so negligent in and about the care of and control of said child at the time the alleged injury occurred that the said negligence contributed proximately to said alleged injury of said child, and without such negligence in the care and control of said child, said alleged injury to said child would not have occurred.'' To the seventh count of the complaint, which was added as an amendment, the defendant set up as an answer thereto the first, third, fourth, seventh and eighth pleas as above set forth. And in answer to the 8th count, the defendant set up the first, third, fourth and eighth pleas.

The plaintiff demurred to the second plea on the grounds, first, that the said plea does not negative the averments of the second count of the complaint, that the injury resulted from the failure of defendant's employé to blow the whistle and ring the bell as required by law; and, second, that said plea does not aver that the engineer did ring the bell or blow the whistle for one-fourth of a mile before and while passing the public crossing, as required by law. Plaintiff demurred to the third plea on the ground that said plea did not show that the defendant's engineer could not, by due care and proper lookout, have seen the child in time to have averted the accident. Plaintiff demurred to the third and fourth pleas to the seventh count of the complaint on the ground that they did not negative the averments of the seventh count, that the engineer did not blow the whistle and ring the bell at short intervals on entering into and passing through said town of Fort Payne, and that the injury resulted from said negligence. The plaintiff demurred to the third and fourth pleas to the eighth count on the grounds, first, that the said pleas, while negativing certain grounds of negligence, did not negative all of the particular grounds in which, under the averments of said count, the defendant might have been shown to have been negligent; and, second, because said special pleas were unnecessarily prolix, and tended to mislead and confuse the issue, since the defendant might have had the benefit of the defense set up in such plea under the

general issue. The plaintiff also demurred to the eighth plea and assigned the following grounds: First, that the said plea attempts to ascribe the negligence of the father to the child; second, that said plea fails to aver any contributory negligence on the part of the child; third, said plea does not set up such contributory negligence as will defeat the action; fourth, that said plea does not aver the facts out of which the alleged contributory negligence arises; fifth, said plea does not aver facts, but only legal conclusions; and, sixth, "that said plea does not aver that the said negligence on the part of defendant was wanton, intentional or reckless." The court sustained the demurrers to the third and fourth pleas, as applied to the seventh and eighth counts of the complaint, and overruled the demurrers to the other pleas.

The tendency of the evidence in behalf of the plaintiff and the defendant, as shown by the bill of exceptions, is sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave the following written charges: (1.) "The court charges the jury that, if the jury believe from the evidence that the absence of defendant's brakemen, or any of them, caused delay in stopping the train they may look to such fact, if it be a fact, in determining whether or not there was negligence on the part of defendant." (2.) "The court charges the jury that, if the jury believe from the evidence that the child, when first discovered, was 150 or 175 yards below the engine, they may look to the further evidence of skilled engineers to determine whether or not the train might have been stopped within that distance by servants of defendant in their places of duty." (3.) "If the jury believe from the evidence that the engineer did all in his power to avert the accident, but any one of the brakemen was negligent in the discharge of his duties, then the negligence of such brakeman is by law attributed to defendant; and if the jury further find that such negligence proximately caused the injury complained of, then the jury should find a verdict for plaintiff, unless they further find that the plaintiff has been guilty of contributory negligence." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's

refusal to give each of the following written charges requested by it : (1.) "The court charges the jury that, if they believe all the evidence in this case, they ought to find a verdict for the defendant." (2.) "The court charges the jury that there is no evidence in this case to authorize the jury to find that the defendant was guilty of wanton, reckless or intentional negligence." (3.) "Negligence consists either in doing what a man of ordinary intelligence, care and prudence ought not to do and would not do, or in omitting to do what a man of ordinary intelligence, care and prudence ought to have done and would have done. And if the plaintiff was guilty of either of these kinds of negligence and thereby contributed proximately to produce the injuries of which he complained in this suit, then the jury ought to find a verdict for the defendant." (4.) "If the plaintiff by ordinary care could and would have avoided the injury of which he complains of, and if by his failure to exercise such ordinary care he contributed proximately to produce the injury of which he here complains, then upon this state of facts the jury ought to find a verdict for the defendant, although they may believe all the evidence as to any alleged negligence of the conductor, engineer or brakeman." (5.) "In this case the law required that the plaintiff should keep and observe such prudent care in protecting his child and keeping him from going into dangerous places, as reasonably prudent men would observe towards their child under like circumstances and the situation surrounding them, and if the jury are reasonably satisfied from the evidence that the plaintiff did not observe such care towards his child, and such omission of care contributed in the slightest degree to the injuries of the child, then in such case the verdict of the jury must be for the defendant, although the defendant may have been guilty of some negligence." (6.) "If the jury believe from all the evidence in this case that the evidence of the plaintiff raises a presumption that he was guilty of such acts of neglect towards his care for the child as contributed in any degree to the injury of the child, then the burden of proof is upon the plaintiff to show he was not guilty of such negligence as contributed in the slightest degree to the injuries of the child, and if the jury are reasonably satisfied the plaintiff has not done this, then the jury must find a

verdict for the defendant, although the jury may believe the defendant was guilty of some negligence.''

On the cause being sent to this court on appeal, there was a *certiorari* issued to bring up a corrected copy of the bill of exceptions. Upon argument, the cause was submitted with a motion to strike from the transcript as originally certified to this court, what purported to be the admission of what the witness Hickman would swear, and also the charges purporting to have been given and refused by the court, on the grounds, first, that neither the admission nor charges were set out in the bill of exceptions which was signed by the presiding judge, as is shown by the corrected transcript, sent up in response to the *certiorari* ; and, second, that neither said admissions nor charges are so identified in the bill of exceptions signed by the judge, as authorized the clerk to copy them into the bill of exceptions copied into the transcript. The facts pertaining to this motion are sufficiently stated in the opinion.

There was judgment for the plaintiff, assessing his damages at $2,000. The defendant appeals, and assigns as error the several rulings of the court to which exceptions were reserved.

W. H. DENSON, and WATTS & SON, for appellant.

AMOS E. GOODHUE, *contra.*

HARALSON, J.—The bill of exceptions sent up as a return to the *certiorari* awarded by this court must be regarded as the true and correct record, since there is a difference between it and the transcript of the cause as originally filed.—*Pearce v. Clements,* 73 Ala. 256.

We settled the principle in the beginning, and have not departed from it since, that ''when a document is sought to be made a part of a bill of exceptions by reference, and not by copy, it must be so described by its date, amount, parties, or other identifying features, that the transcribing officer can, unaided by memory, readily and with certainty determine, from the description itself, what document or paper is referred to, without room for mistake.''—*Looney v. Bush, Minor,* 413 ; *Parsons v. Woodward,* 73 Ala. 348. In this bill of exceptions, we find two blanks left by the judge signing it. The first occurs

after the words, "The defendant then offered the admissions of what the witness, Hickman, and others would swear, if present," where these words appear in parenthesis : "(These admissions are with the file of papers in the circuit clerk's office, and the clerk will set them out.)" The showing as to the witness, Hickman, alone, appears in the record, and we are to presume the showing as to other absent witnesses, if any, was not made, or, if made, not allowed. The clerk, in filling this blank under the direction of the judge, copied what purports to be a showing for a continuance of the cause, on account of the absence of the witness, Hickman, which showing contains the title of the cause, followed by a statement of the reasons why the witness was not present, and of what he would prove, if present. It does not appear there was any other witness in the cause by the name of Hickman, and nothing appearing to the contrary, the presumption is, there was but one of that name. The name of the witness is given, what he will swear is written out, the judge certifies that it was offered in evidence, that it is with the file of papers, and directs the clerk to set it out in the bill. Its identification seems to be so complete, as to leave no room for the clerk to mistake it for any other paper. He could, unaided by memory, determine, readily, what document was referred to by the judge, and he very properly inserted it as a part of the bill.

The second blank is at the point where the judge refers to the written charges of the plaintiff and the defendant in these words : "The court gave the following written charges to the jury, at the request of the plaintiff. To the giving of each of said charges, the defendant then and there made a separate *objection* to the giving of each of said charges, and the clerk will set out each of said charges." And, "The defendant requested the court to give the following written instructions to the jury. The court refused to give each of said instructions, and the defendant then and there made a separate exception to the refusal of the court to give each of said charges. The clerk will here set out said charges." The *certiorari* awarded in the cause by this court, on a suggestion of an incomplete record, required the clerk to certify a full and complete copy of the bill of exceptions as signed, and copies of the charges asked in the cause,

separately from the bill of exceptions, with the endorsements thereon. He certifies he has done so, and that the words, "Given, Jno. B. Tally, J." and the words, "Refused, Jno. B. Tally, J." were in the handwriting of Judge Tally, and are the only charges in that court in this cause. Section 2756 of the Code makes it the duty of the presiding judge, to write "given" or "refused," as the case may be, on the charges moved for in the trial of a cause, and sign his name thereto, which thereby become a part of the record. When the judge instructed the clerk to insert in the bill charges which the statute makes a part of the record, there could have been no more uncertainty as to what was meant, than if reference had been made to any other part of the record in a case, if it had been offered in evidence, and the court had ordered it inserted. There were no other charges than the ones set out in the bill of exceptions, in the original and amended transcript, and there was no opportunity for mistake. There was no error in the clerk inserting them in the bill.—*Mobile Savings Bank v. Fry*, 69 Ala. 348; *Mobile & Birmingham R. R. Co. v. Ladd*, 92 Ala. 288, 9 So. Rep. 169.

The evidence is without contradiction, that the child that was killed was about eighteen months old; that it had wandered unattended out of its father's yard, and had gone down the railroad track, which was about 50 feet from the dwelling, and twenty-five feet from the yard fence, some hundred and fifty yards, and had clambered up on the track, just as the train was approaching; that its father, the plaintiff, had arrived at the house from town, about a half an hour before, and was at home when the train passed his door; that he knew the train was coming, as it was preparing to do so when he passed the depot, on his way home, and he knew the schedules of the trains on that road; that on arrival at home, he saw the child in the kitchen and playing about the yard, a few minutes before the train came along; that the train passed and stopped, and he was soon informed his child had been injured, and he supposed it had pushed open the gate to the yard fence, and gone out. Here, then, was a very young child, living within fifty feet of a railroad, along which trains were in the habit of passing several times a day, allowed to play by itself in the yard with the gate to the yard fence so inse-

cure, as it could be opened by one of its age, with no one to attend or nurse it, and keep it from going where it pleased, and the father in the house, with knowledge of the schedules of the trains that passed his door daily, and that this train would pass along very soon. It is the assertion of a plain and obviously just principle to say, if parents permit a child of tender years to run at large without a protector in exposed and dangerous places, where it is liable to be damaged, they fail, in a legal sense, in the performance of their duties, and are guilty of such negligence as will preclude them from a recovery of damages for any injury resulting therefrom, which is not recklessly, wantonly or intentionally inflicted.—Beach on Con. Neg., § 142. Parents living in such close proximity to a railroad as this plaintiff did are under legal obligations to exercise care to protect their children from almost hourly peril, by having them attended or kept within secure enclosures. The evidence makes a plain case of contributory negligence on the part of the plaintiff for the injury sustained, such as disentitles him to compensation by the defendant corporation, unless it is overcome by more than simple negligence on the part of the defendant. Was the company guilty of such negligence?

The evidence of the witnesses for the defense tends to show, that the train was supplied with a sufficient force, and with the necessary and proper appliances for moving and controlling it ; that a careful lookout for obstacles on the track ahead was observed by the engineer ; that as soon as the child came into view, it was discovered, and all preventive appliances were at once put into operation to save it, but without avail ; that it was not discovered in time to prevent the accident, and there is nothing tending remotely to show, so far as their evidence discloses, that the engineer and the force under him were unwilling or indifferent to do what they could to avoid the deplorable accident, after they discovered the exposure of the child. On the other hand, there is evidence introduced by plaintiff, competent for the jury to consider as tending to show, that he and his crew did not do all that might and ought to have been done to prevent the accident, after the peril of the child had been discovered—*Williams v. S. & N. Ala. R. R. Co.*, 91 Ala. 635, 9 So. Rep. 77 ; *Frazer v. S. & N. Ala. R. R. Co.*,

81 Ala. 186, 1 So. Rep. 85; *Ga. Pa. R. Co. v. Lee*, 92 Ala. 262, 9 So. Rep. 230.

The witness, Nichols, who testified he had been an engineer on a railroad for twenty years, swore that he had examined the ground at the place of the accident, and knew the road, and, presuming the engine to be in good condition, with all the modern appliances in general use, and known to skillful engineers,—and such the evidence tends to show was the condition of this engine,— this train, by the use of such appliances, could have been stopped inside of one hundred and fifty yards. The engineer of the train testified, that the engine was about one hundred and fifty or one hundred and seventy-five yards from the child, when he first saw it, and that it was two hundred yards from the point where he first began to reverse his engine to the place where he stopped the train. The evidence of the witness, Nichols, leaves some ground of inference, on the part of the jury, which we are not permitted to withdraw from them, that the engineer failed to promptly use all available appliances to stop his train before reaching the child.

Pleas Nos. 2, 3 and 4, as amended, present, each, a complete defense. The demurrer to plea No. 2 was properly overruled. Pleas 3 and 4, as applied to the 7th count of the complaint, were no answers thereto, and the demurrers to them were properly sustained. Pleas 3 and 4, as applied to the 8th count, furnished answers thereto, and the demurrers to them should have been overruled. But this was error without injury, since the defendant had the benefit of the same facts under the general issue.—2 Brick. Dig., 352, § 348.

Charges given for the plaintiff, Nos. 1 and 2, are argumentative, and might have been refused on that account, but that they were given is not reversible error.— *Bancroft v. Otis*, 91 Ala. 279, 8 So. Rep. 286; *Waxelbaum v. Bell*, 91 Ala. 331, 8 So. Rep. 571. Charge No. 3 given for plaintiff asserts a correct proposition. As there was some conflict in the evidence, charges Nos. 1 and 2, asked by defendant and refused, were properly refused. Charge No. 3 requested by defendant and refused, ignores the consideration of any willful, wanton or intentional negligence on the part of the defendant's employés, and was properly refused. If the evidence for the defendant, as to the alleged negligence of the engineer, conductor

and brakeman is to be believed, the jury might have found for the defendant. Charge 4 on this subject, requested by defendant and refused, was faulty, for the same reason we have stated No. 3 was properly refused.

Charges Nos. 5 and 6, requested by defendant, ignore the consideration by the jury of any gross or wanton negligence by defendant's employés in charge of the train, and in making the slightest degree of negligence on the part of the plaintiff, the legal equivalent of that degree of negligence which contributed proximately to the injury.

We find no reversible error in the record, and the judgment of the circuit court must be affirmed.