73 So.2d 77

**SHIRLEY v. SHIRLEY.**

**4 Div. 770.**

Supreme Court of Alabama.

Feb. 25, 1954.

Rehearing Denied May 27, 1954.

Chauncey Sparks, Eufaula, for appellant.

Jack W. Wallace, Clayton, Archie I. Grubb, Eufaula, for appellee.

## PER CURIAM.

This is a suit by a mother for the wanton death of her minor child caused by another minor who died in the same accident two or three hours after the death of plaintiff's intestate.

The suit is authorized by section 119, Title 7 of the Code if the cause of action survived the death of defendant's intestate under the provisions of the Act (No. 737) approved September 5, 1951, General Acts 1951, page 1290, which amended section 150, Title 7, Code.

Prior to that amendment the cause of action would not have survived since section 150, Title 7, as it then existed, made *actions* on claims of that sort survive the death of defendant tortfeasor, except for injuries to the reputation. Section 153, Title 7, provided then and now for a revival of the action. That section therefore did not then include *causes of action* on which no suit had been instituted. Wynn v. Tallapoosa County Bank, 168 Ala. 469, 490-493, 53 So. 228.

The instant suit is by virtue of section 119, supra, and not section 123, Title 7. The latter section has continued to contain a provision that when a suit has been begun it is not abated by the death of defendant, but may be revived against his personal representative. Section 119 (by the parent of a deceased minor child) has never had that clause in it. But prior to the amendment of section 150 by the Act of 1951, supra, the question arose in a suit under section 119. After a full review of the authorities and a careful consideration of the statutes, this Court, with all the justices concurring, held that section 150 authorized a revival of a pending action under section 119 when the defendant tort-feasor had died. Ex parte Corder, 222 Ala. 694, 134 So. 130.

This holding was not thought to have been in the way of a later decision that a suit brought under section 121, Title 7, against the personal representative of the person liable under it was not justified by section 122, Title 7, although that statute provided then, as it does now, for the survival of the *cause of action* under section 121. At that time there was no statute which authorized the survival of a cause of action against a tortfeasor under section 119 or 123. It was thought by the Court that the provision of section 122 for the survival of the "right of action" there referred to cases where the tortfeasor or the injured party had died from some cause other than that sued on and where the living had had a just demand against the living. Webb v. French, 228 Ala. 43, 152 So. 215.

Ex parte Corder, supra, was an action under section 119 as well as a cause of action by the father of a minor, wrongfully killed, against the living person who caused

his death, and we held that on the death of the defendant tortfeasor the action was properly revived against his personal representative by virtue of section 150, supra, as it then stood.

So that prior to the amendment of 1951, supra, we had held that section 150 (5712) applied to section 119, supra, and was subject to revival under section 153 (5715). The latter section is primarily a provision for a revival when plaintiff or defendant dies pending the suit. Section 150, before the Act of 1951, had to do with the matter of the survival of an action after the death of a party. The Act of 1951, amending section 150, applies in terms to all causes of action as well as actions, still excepting injuries to the reputation. We see no reason why we should hold that section 150 as amended does not apply to section 119, supra, as before it was amended, or as for that matter to section 123, not here involved. We are not willing to limit its application to a situation where a living person has a claim for his personal injury against another living person as by section 121, supra. Sections 119 and 123, unlike section 121, do not provide a cause of action for an injury not causing death. In Webb v. French, supra, the court was dealing with a law, section 121, that provided damages for injuries not causing death.

■■ If the injury caused death section 119 or 123 must be used as the facts justify. There might of course be created by law a cause of action against the tortfeasor who may have died later either from the same accident or some other cause. Under neither section 119 nor 123 is the estate of plaintiff's deceased benefited. Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88; McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291. The circumstance that the damages are punitive (McWhorter v. Peek, supra), did not prevent a survival of a suit under section 119 by virtue of section 150 before it was amended, although the deceased tortfeasor could not then be punished by the court. We think the amendment should not prevent its application to the cause of action before suit, and, therefore, the amendment has application to all actions and causes of action not otherwise controlled. But that actions and causes of action under section 121 are controlled by section 122 as interpreted in Webb v. French, supra. There was no error by the trial court in so holding.

■■ Counsel for appellant argues that the evidence is not sufficient to show that defendant's intestate wantonly caused the death of plaintiff's intestate, as required by the guest statute and as alleged in the complaint. Section 95, Title 36, Code. This insistence is first made on the theory that when the evidence does not sustain plaintiff's right to a judgment the court should render a judgment for defendant notwithstanding the verdict or without submitting the case to the jury. But this principle only applies when the complaint does not state a cause of action. Likewise, a judgment for plaintiff may be rendered when there is no plea of merit but the only issue is one taken on immaterial pleas. National Surety Co. v. First National Bank, 225 Ala. 108, 142 So. 414; City of Birmingham v. Andrews, 222 Ala. 362, 132 So. 877; Code, Title 7, § 570.

■ When the evidence is finished and plaintiff has failed to make any proof of all the essential features of his cause of action it is not prejudicial error for the court, without a written request as required by section 270, Title 7, Code, to direct a verdict for defendant. O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459 (14), 168 So. 580.

■ On the other hand, it is not error for the court not to do so unless requested in writing. And if the jury finds for the plaintiff when the evidence does not prove his cause of action, the defendant's remedy is by a motion for a new trial, unless he had requested the affirmative charge before the jury retired and its refusal by the court. Section 276(6), Title 7, Code. This Court has no power to redress such a wrong unless a motion for a new trial is made on that ground. Alabama Great Southern R. R. Co. v. Powers, 73 Ala. 244(4), or otherwise brought to the

attention of the trial court and there acted on.

The record shows both a refusal to grant a new trial on that ground and a refusal of the affirmative charge requested by defendant, so that the contention is properly presented.

There was no eye witness to the accident nor to the fact that defendant's intestate was driving the car, nor as to its speed. A statement of the evidence in appellant's brief is as follows:

"It is shown by the evidence that Clarence Ladell Shirley, Jr., and Ruth Shirley were both killed in a car wreck which occurred on the road between Clayton and Midway in Bullock County. Their death occurred very close together; Ruth Shirley having survived a few hours after the death of Clarence Ladell Shirley, Jr., but without gaining consciousness.

"There were no eye witnesses to the accident. The only people who know how the accident happened, what caused it, and who was driving the car are dead. The accident happened after dark on the evening of August 3, 1952. The only evidence offered by the plaintiff was the testimony of persons who went to the scene of the accident at varying times after it occurred. The bodies of the occupants were found in or near the road sometime after the accident. The deceased, Ruth Shirley, was found on the south side of the wrecked vehicle, (the car was going approximately north) and on the right side of the road. The body of the deceased, Clarence Ladell Shirley, Jr., was found north of the car and in the middle of the road.

"The only other evidence offered by the plaintiff, and to which the defendant objected, was who was driving the car when it left in the direction of the place of the accident, a distance of fifteen miles or more, and thirty or more minutes before; the testimony as to the scene of the accident by a neighbor who lived some quarter to one-half mile away, and testimony by the highway patrol who visited the scene after the injured had been moved.

"The action was commenced by the mother against the administrator of the estate of Ruth Shirley, deceased.

"The defendant offered no testimony, except brief cross examination of the plaintiff's witnesses."

A statement of the evidence in appellee's brief is as follows:

"The evidence discloses that Clarence Ladell Shirley, Jr., resided in Clayton, Alabama, with his mother, Jena Shirley, and that he was a minor, being sixteen years of age on the date of August 3, 1952. Ruth Shirley resided in Louisville, Alabama, and on the date of August 3, 1952, she was in Clayton and invited Clarence Ladell Shirley, Jr., to ride with her to Midway, Alabama, on an automobile which had been left in her possession for the weekend by her father for her pleasure and the pleasure of anyone else she cared to invite to ride with her.

"Ruth Shirley and Clarence Ladell Shirley, Jr., left the home of the plaintiff on the automobile just before dark with the expressed intention of going to Midway, Alabama. At the time they drove away from the home of the plaintiff Ruth Shirley was driving the automobile. They proceeded directly from the plaintiff's home to the Standard Service Station in Clayton, arriving at the station about 'dust dark', at which time Ruth Shirley was still driving the automobile. After staying at the Standard Service Station for a sufficient length of time to get gasoline for the automobile, they drove away from the station and headed toward the square, or Louisville Street, at which time Ruth Shirley was still driving the automobile. About ten minutes after they left the Standard Service Station they were seen again when they passed the station going toward Midway on Alabama Highway

No. 51, which is the Clayton-Midway Highway. Ruth Shirley was driving the automobile when it was last seen proceeding on the Clayton-Midway highway toward the point where the accident occurred.

"The testimony showed that Ruth Shirley was a college student and was nineteen years of age on the date of the accident and that she frequently came by the boy's home and invited him to ride with her, however, the boy was never seen driving the car when out with Ruth and, in fact, there was no testimony to show that he had ever been seen driving any automobile. The testimony further showed that Ruth Shirley was a licensed driver whereas Clarence Ladell Shirley, Jr., did not have a drivers license.

"After the automobile was last seen proceeding from Clayton toward Midway on the Clayton-Midway Highway, at which time Ruth Shirley was driving, it was not seen again until after it wrecked on the Clayton-Midway Highway some very few minutes after leaving Clayton and some ten miles distant. The news of the accident was received back in Clayton about thirty minutes after the parties left Clayton.

"The evidence showed that the automobile was being driven at a highly excessive rate of speed at 'dust dark' on a crooked highway. The speed of the automobile was estimated as being from seventy-five to one hundred miles per hour at the time it overturned. The physical indications of the scene of the accident indicated that the automobile traveled a distance of 705 feet from the time it went out of control until it stopped rolling, having rolled for a distance of 240 feet and ten to eleven times in the opinion of one witness and four to five times in the opinion of another. The automobile was almost completely demolished, it being necessary to read the name plate on the back trunk before its make and model could be definitely established. The two occupants, Ruth

Shirley and Clarence Ladell Shirley, Jr., were both thrown clear of the automobile as it overturned. The boy's body was thrown a distance of seventy-two yards beyond the point where the car came to rest after rolling over and the girl's body was thrown approximately one-third that distance. The boy, Clarence Ladell Shirley, Jr., was killed instantly and the girl died some two or three hours later."

We have read the record and find it supports the statements of it by counsel in their respective briefs except as indicated. We think this evidence shows that the jury was justified in inferring, not presuming, that the car was driven by defendant's intestate at a wantonly excessive rate of speed and in a manner which was obviously dangerous, and which was the proximate cause of the accident and death of plaintiff's minor child. Hackley v. Robey, 170 Va. 55, 195 S.E. 689. Some of our cases which are more or less applicable are as follows: Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 580, 141 A. L.R. 697; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; id., 252 Ala. 93, 39 So.2d 399; Cornelison v. Logan, 253 Ala. 618, 46 So.2d 215, 21 A.L.R.2d 206.

On the second appeal in the Harper case, supra, the speed was automatically accelerated by proceeding down a long incline in the road, and the claim was that the driver wantonly failed to use the appliances available to check the speed. But there was no evidence of such failure. The failure to check the speed of a heavy truck so proceeding could not be attributed to the driver's intent or wantonness, for we did not know what occurred to prevent him from doing so. His brakes or control gear could have failed: the reason for not doing so was speculative.

In the instant case the claim is not for failing to do something, but for willfully or wantonly doing the dangerous act. The speed of the car, one hundred miles per hour, was not caused by the down grade of the road ahead. The car could not have been then and there so driven except by the voluntary act of the driver. The jury

could have found that the car was being driven one hundred miles per hour. There was direct evidence to that effect, which was corroborated by evidence of conditions following the wreck. The disaster occurred at night. The road was fairly level and straight for about a mile before and after the curve where the accident occurred. It was at the far end of the gradual curve where the car left the pavement of the road and turned over "four or five" or "ten or eleven" times, according to the testimony. There was no obstruction nor were others traveling that place at the time, and the road was dry. The facts of the accident proved that the car was being driven at a dangerous rate of speed. The driver must have intended to make that speed at that place: it was done by feeding gas. There was nothing to obstruct her view of the curve for a mile before reaching it, and she must have known of the danger of such a speed at such a curve. She must have voluntarily taken the risk and held to the speed.

In the Couch case, supra, the loaded truck, with brakes known to be defective, was started and driven down a sharp grade causing the excessive speed and the wreck. It was held properly to go to the jury on a wanton count. In the Harper cases, supra, there was no evidence of defective brakes, known to the driver. That difference was an important one.

Appellant insists that his motion to strike certain words from the complaint should have been sustained and excepted to the action of the court in overruling it. Those words are as follows:

"M. D. Shirley owned an automobile which he intrusted to the operation and management of the said Ruth Shirley on said date for her pleasure and for the pleasure of any others that she cared to invite to ride in said automobile and that on the 3rd day of August, 1952".

■■■■ That is a statement of evidential matter material for consideration by the jury in determining an issue dependent upon circumstantial evidence. It was not appropriate to insert it in the complaint. Ingalls Steel Products Co. v. Foster & Creighton Co., 226 Ala. 122(4), 145 So. 464; Bassett Lumber Co. v. Hunter-Benn & Co., 238 Ala. 671, 193 So. 175. But a recital of evidence in the complaint, although not proper, does not always render the pleading objectionable. If it states all the essential facts it is not rendered fatally defective because evidentiary facts in corroboration of essential facts are also pleaded. 71 C.J.S., Pleading, § 12, p. 33, notes 95–96. Matters of evidence may be stricken on motion (71 C.J.S., Pleading, § 465, p. 974, note 32), but they need not be stricken when their allegation is not prejudicial. 71 C.J.S., Pleading, § 473, p. 978. Those matters had a tendency to support other circumstances to show that defendant's intestate was driving the car when the accident occurred, and were proven on the trial. There is no apparent prejudice to appellant resulting from such allegations in the complaint. Therefore, there was no reversible error in the ruling.

■■■■ It was noted in the first Harper case, supra, that the ultimate facts may be proven by circumstantial evidence, but those circumstances must be proven by direct evidence. One of the ultimate facts in this case was that Ruth Shirley was driving the car that caused the death of the boy. That could be inferred from the circumstances that the car was owned by her father; that she frequently drove it; that she had a driver's license; that the boy did not have; that she frequently took him with her in the car, and that she always drove it; that he was never known to drive it; that when they left Clayton, starting on this trip a few minutes before the accident, she was driving. All of those circumstances were proven by direct evidence. There was also direct evidence as to the speed of the car at the time of the accident, and the physical conditions immediately following the accident, together with the condition and lay of the road at the place of the accident, approaching it as they did, and beyond the place of the accident.

While we do not know from the evidence the exact cause of the car leaving the paved roadway and turning over several times, the jury was justified in finding that whatever may have been the specific cause, the excessive speed at such a place proximately produced that result. Driving a car at one hundred miles per hour could reasonably produce an accident at almost any time or place as a proximate cause of it.

■■■■■ Objection was made to the proof that Ruth was driving the car when they left Clayton. What occurred preceding the accident, such as the speed of the car, etc., depends for its admissibility on the facts of each case. It is usually admissible when found to be material to the issue and is not too remote in time or place. Townsend v. Adair, 223 Ala. 150(12), 134 So. 637.

The trial judge gave a clear charge to the jury explaining to them the issues and burden of proof, and gave many special charges requested by defendant. We see nothing in the record tending to create an unfair or hostile atmosphere in the court during the pendency of the trial, nor which requires us to grant the motion for a new trial, which was refused by the court.

We think it unnecessary to discuss each assignment of error argued by appellant in brief. We have given careful consideration to all of them and find no reversible error. The judgment should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON, J., dissents.

On Application for Rehearing

PER CURIAM.

■■■ Appellant's counsel takes us to task for not responding to his assignment going to the sufficiency of his plea of contributory negligence. He was right in assuming that we did not respond to it because the only count was one of wantonness, to which contributory negligence is not ordinarily applicable. But his argument is (a) that this action is statutory (the guest statute), and requires plaintiff to prove wanton or willful misconduct, and negligence is not sufficient to support the claim,—therefore contributory negligence is available as a defense to the only sort of action so authorized. We cannot agree with that reasoning. When the statute requires willfullness or wantonness, it does not change the principles which apply to such an action and does not create the defense of contributory negligence which is not applicable to a count of that nature under other circumstances.

It is also argued (b) that the contributory negligence alleged in the plea is that of the plaintiff who is the beneficiary of the action, and that her negligence occurred "a long time before the accident and was not a part of the accident," in that, she let the child ride with an incompetent driver, known to her to be such, and took the risk of its injury "by any kind of negligence". But wantonness is not "any kind of negligence". They denote very different concepts. Wantonness exists only when negligence is absent. Louisville & Nashville R. R. Co. v. Markee, 103 Ala. 160, 15 So. 511; Louisville & Nashville R. R. Co. v. Perkins, 152 Ala. 133, 138(3), 44 So. 602.

■■■ It is true that the negligence of a parent suing under section 119, Title 7, Code, is a good defense to an action by the parent charging negligence in causing the death of a minor child. McGough Bakeries Corp. v. Reynolds, 250 Ala. 592, 35 So.2d 332; Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88; Alabama Utilities Service Co. v. Hammond, 225 Ala. 657, 144 So. 822; Alabama Power Co. v. Stogner, 208 Ala. 666, 95 So. 151; Alabama Great Southern R. R. Co. v. Dobbs, 101 Ala. 219, 12 So. 770,

774. In the Dobbs case it is observed that the principle of contributory negligence applies only to an injury "which is not recklessly, wantonly or intentionally inflicted". That was a death case under the same statute. It was said that such negligence will preclude him from recovering damages from the railroad company for killing his child who had gone upon the railroad tracks, unless the railroad company is guilty of *more than simple negligence.* The court affirmed the judgment for plaintiff on finding that the evidence supported a verdict that defendant was guilty of more than simple negligence notwithstanding plaintiff's contributory negligence. The same principle is stated in Missouri K. & T. R. Co. v. Perino, 89 Okl. 136, 214 P. 907; 25 C.J.S., Death, § 46, p. 1143, note 74. We see no reason for making a distinction in an application of the principle of contributory negligence as here contended for.

Appellant's counsel also seeks a review of the opinion to the extent of holding that the amendment of section 150, Title 7, Code, by the Act of September 5, 1951, General Acts 1951, page 1290, applies to causes of action provided for in section 119, Title 7, Code, by which this cause of action was created. It is our view that the Legislature did act on this status by the Act of 1951, and intended it to apply to sections 119 and 123, supra. We do not find that the argument presents the question in a new or different light than as discussed in the opinion which we think correctly treats the subject.

Appellant also excepted to the following portion of the court's oral charge: "But, if a homicide is unlawful or improperly brought about wantonly, as the result of wanton negligence, the law says a penalty may be assessed against the person who caused that injury as punishment to the person who did it, if she happens to be living or if she be dead, for the purpose of deterring others similarly situated from taking steps of that character. It is for something they ought not to do, and then they make themselves an example so as to deter or restrain others from the commission of that kind of conduct."

We do not interpret the excerpt from the oral charge, to which exception was reserved, as authorizing damages to punish the deceased charged with wantonly killing plaintiff's child. But that she being dead, the damages awarded are for the purpose of deterring others similarly situated from taking steps of that character. That is a proper view of the nature of the damages claimed,—the fixation of a sum which will have a tendency to prevent such homicides. Breed v. Atlanta, B. & C. R. Co., 241 Ala. 640(4), 642, 4 So.2d 315. The statute provides for "such damages as the jury may assess". Code 1940, Tit. 7, § 119.

It does not in terms provide for a punishment. But the purpose is to prevent homicides, and if the person who is guilty is alive when the judgment is rendered to punish such person. If he is then dead there is no power to punish him, still the jury is authorized to assess such amount of damages against the administrator of his estate as will, in their opinion, best serve the purpose of the law. The trial judge in this case observed that principle in his charge.

The application for rehearing should be overruled.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Application overruled.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON, J., dissents.