This case arose out of an automobile accident, which occurred on June 26, 1977, in Pickens County, Alabama, in which all the occupants of a Volkswagen automobile were killed. Plaintiff, Administratrix of Tamela Hickman's estate, sued the administrator of the estate of Donald Gore for wrongful death, alleging wanton conduct. The jury returned a verdict for $18,500 for plaintiff. Defendant appealed, alleging various errors in the trial of the case, principally that there was not a scintilla of evidence to support the verdict on the issue of wantonness. We agree and reverse and remand.
Donald Gore, Tamela Hickman, and Donald Gibson attended a fraternity rush party held at Lake Tuscaloosa, from 12:00 noon to 5:00 p.m. Mr. Gore and Miss Hickman, of Gadsden, were staying at the Inscho home (Mrs. Barbara Inscho was Miss Hickman's aunt). They went there after the party and spent two to three hours cleaning up, getting dressed, and eating dinner. Donald Gore's brother was scheduled to play in a band in Columbus, Mississippi, and Mr. Gore, Miss Hickman, and Mr. Bruce Inscho (the Inschos' son) left for Columbus between *Page 1048 
7:00 p.m. and 8:00 p.m. to see him play. The accident occurred on the return trip to Tuscaloosa; the exact time was never determined, but officials were on the scene early the next morning.
The Volkswagen automobile was traveling east on Highway 82 toward Tuscaloosa. The accident occurred at a curve (known locally as "Dead Man's Curve") on a section of the highway near Reform, about halfway between Columbus and Tuscaloosa. There were no eyewitnesses to the accident. Pickens County Sheriff Louie Coleman, who investigated the accident, testified that he received a call after midnight on Sunday morning. He testified that the curve was dangerous, that it was well marked with signs and reflectors, that the speed limit was either 35 or 40 m.p.h., that it appeared that the automobile left the pavement about thirty-five to forty yards before a bridge abutment, that the bridge crossed a small creek, that the automobile careened across the creek and came to rest on the opposite embankment, that he did not know the speed the automobile was traveling, that he did not know who was driving the automobile, but that he was told it belonged to Mr. Gore, that the occupants were dead when he arrived, and that rescue units and a state trooper had been on the scene for an hour before he arrived.
There was testimony, from witnesses who saw the parties the afternoon and evening before the accident, to the effect that Mr. Gore had drunk a few beers at the fraternity rush party, and that he was driving the automobile when he left the lake party, and also when the three left for Columbus between 7:00 p.m. and 8:00 p.m. The accident occurred sometime on the return trip. The case was submitted to the jury on the issue of wantonness only. The jury returned a verdict in favor of the plaintiff and against the defendant and assessed damages at $18,500.
 "Wantonness has been defined as the conscious doing of some act or the omission of some duty which under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result, and before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result. Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277; Johnson v. Sexton [277 Ala. 627, 173 So.2d 790], supra."
Lewis v. Zell, 279 Ala. 33, 36, 181 So.2d 101 (1965).
The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence — it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference, Whaley v. Lawing,352 So.2d 1090, 1092 (Ala. 1977) — it may not be left to the conjecture or speculation of the jury. Griffin Lumber Co. v.Harper, 247 Ala. 616, 622, 25 So.2d 505 (1946).
Defendant contends that the motion for a directed verdict should have been granted because there was not a scintilla of evidence on the issue of wantonness, there was no evidence as to who was driving the vehicle, there was no evidence regarding the speed of the vehicle at the time it left the highway or at any time prior thereto, there was no evidence tending to show why the vehicle left the highway, and there was no evidence tending to show that the operator of the vehicle was under the influence of intoxicants at the time of the accident. Defendant adds that the mere fact that the automobile left the paved highway, for some unexplained reason, does not furnish a scintilla of evidence of wantonness; that is, the jury could not reasonably infer, from the mere fact that the automobile left the highway, that the reason the automobile left the highway was due to the wanton conduct of the driver, even if it is assumed Mr. Gore was the driver. To reach any other conclusion, defendant says, would permit the jury to find the driver guilty of wanton conduct based solely on conjecture and speculation. *Page 1049 
Plaintiff contends that the burden of proof as to wantonness was met because there was evidence that the driver of the automobile was under the influence of intoxicants, on the theory that proof of prior consumption of intoxicating beverages is relevant to prove intoxication at a later time, and because there was evidence that the curve was well marked, making the danger of that section of highway apparent to travelers. Thus, it is contended that the evidence presented supported a reasonable inference that the driver of the vehicle was Gore, that, under the influence of intoxicating beverages, he operated the vehicle into a curve which was so dangerous that signs and reflectors had been placed approximately fifty yards prior to the curve to warn oncoming traffic, that he knew the apparent danger of the curve and the probable consequences if he did not take reasonable care to negotiate the curve, and that, with reckless indifference to the consequences, he wrongfully and intentionally operated the car in a manner which proximately caused the death of Hickman.
The facts of this case fall between Shirley v. Shirley,261 Ala. 100, 73 So.2d 77 (1954), and Griffin Lumber Co. v. Harper,252 Ala. 93, 39 So.2d 399 (1949), [hereinafter referred to asGriffin III].
In Shirley, this Court affirmed a judgment entered in favor of the plaintiff based upon wantonness. As in the case at bar, in Shirley, there was no eyewitness to the accident, nor as to the car's speed, nor to the fact that defendant's intestate was driving the car. There was, however, testimony that defendant's intestate had been seen driving the car fifteen miles and thirty minutes before the accident. The physical evidence showed that the automobile was being driven at a highly excessive rate of speed, at dusk, on a crooked highway. The speed of the automobile was estimated as being from seventy-five to one hundred miles per hour at the time it overturned. Once out of control, according to physical indications at the scene, it traveled a distance of 705 feet from the time it went out of control until it stopped rolling, having overturned for a distance of 240 feet and ten to eleven times. The automobile was almost completely demolished, and the two occupants were thrown clear of the automobile as it overturned. One body was thrown 72 yards beyond the point where the car came to rest after rolling over. This Court held that the evidence showed that the jury was justified in inferring, not presuming, that the car was driven by defendant's intestate at a wantonly excessive rate of speed and in a manner which was obviously dangerous, and which was the proximate cause of the accident and death of plaintiff's minor child. There, the Court wrote, viz.:
 "In the instant case the claim is not for failing to do something, but for willfully or wantonly doing the dangerous act. The speed of the car, one hundred miles per hour, was not caused by the down grade of the road ahead. The car could not have been then and there so driven except by the voluntary act of the driver. . . . The driver must have intended to make that speed at that place: it was done by feeding gas. . . . She must have voluntarily taken the risk and held to the speed."
Shirley, supra, 261 Ala. at 106, 107, 73 So.2d at 82. (There is no such evidence in the instant case.)
In Griffin III, this Court reversed a judgment rendered on a jury verdict for the plaintiff based upon wantonness. The evidence showed that the defendant was driving a truck along a highway at about 2:00 p.m. with a heavy load of logs. As it passed over a crest of a hill it picked up speed, to about 65 or 70 miles per hour, and did not make a curve. Instead the truck tracks showed that it headed straight off the course of the road and hit a stone abutment flanking a culvert which crossed a ditch, throwing the truck off into the ditch and killing both the driver and the plaintiff's son. The tracks showed no skid marks, and were straight, which indicated that there were no brakes applied to slow the speed, and that the truck was not steered out of the straight course which led the truck into the abutment. This Court *Page 1050 
held that to support wantonness, the evidence must support the conclusion that the failure to slow down the speed and make the curve was due to the willful or reckless failure to exercise all reasonable effort to do so, viz.:
 ". . . There is no direct evidence on that subject. Certainly the speed at which the truck was traveling was not alone sufficient evidence from which wantonness may be inferred. The rate of speed must be intentional or reckless. The circumstances must require a reasonable inference of apparent danger from such speed.
 "The circumstances are sufficient to support a finding that such a speed was apparently dangerous, and that he knew of such danger. So that the question is controlled by the inquiry into the reason for such speed and the reason for not making the curve. As to that reason there is no evidence from which a reasonable inference may be drawn that it was willful or reckless, or that he was not doing what he could to avert the danger. Such brakes on the truck do fail unexpectedly at times, as shown by the evidence. . . . Was the failure of the driver due to such cause? No one can tell. There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has as its motive the fear of pain or death. [Citation omitted.] This situation must be analyzed in the light of that presumption. There is no reasonable theory deducible from the evidence which conflicts with it. There are no circumstances shown by the evidence which support an inference that he either willfully or recklessly did not use the means available to minimize the danger. A verdict cannot be rested on speculation, especially when a well understood presumption conflicts with it."
Griffin, III, 252 Ala. at 95, 39 So.2d at 401.
In the case at bar, plaintiff contends that since there was direct testimony that Gore owned the car, because he was seen driving the car from the lake party and from the home of Inscho's parents to Columbus, and since he had been seen drinking beer at the party, it was up to the jury to determine what weight to give this evidence and to draw inferences therefrom. Thus, plaintiff argues, the jury could reasonably infer that Gore was the driver of the automobile and that he was driving under the influence of intoxicants. Defendant, on the other hand, contends that evidence that Gore owned the car, and that he was seen driving the car that afternoon and evening does not support the inference that he was driving the car on the return trip. Defendant points to evidence that Ms. Hickman had been seen on more than one occasion driving Mr. Gore's automobile. Thus, defendant contends, there is no reasonable inference that Gore was driving on the return trip.
We agree that the evidence is completely lacking as to who was driving the automobile at the time of the accident. The mere fact Mr. Gore drove the car many hours earlier that day in Tuscaloosa would not necessarily support an inference that he was driving the automobile on the return trip from Columbus. The evidence is even tenuous that Mr. Gore owned the Volkswagen. Moreover, to infer from the evidence that Mr. Gore was intoxicated on the return trip from Mississippi solely because he had several beers many hours earlier that day, that he entered the curve with full knowledge that he was in that condition, that he knew the danger of the curve, that he knew that attempting to negotiate the curve in an intoxicated condition would likely result in serious injury, and that nevertheless, with reckless indifference to these consequences, he consciously, and intentionally, did some wrongful act or omitted some duty while attempting to negotiate the curve, which produced the death of Hickman, exceeds the bounds of reasonableness and legitimacy. The essential elements of wantonness were at best left to conjecture or speculation. *Page 1051 
In the case at bar, there was no evidence of the estimated speed the vehicle was traveling when it entered the curve. And, to indulge in an inference that Mr. Gore was voluntarily intoxicated at the time of the accident is unreasonable, especially where there was evidence that Gore and the other parties went to the home of Inscho's parents, washed up, changed clothes, ate dinner, and stayed two or three hours before leaving for Columbus. In addition, Gibson's mother testified that she did not recall any of the parties drinking while at her home. No evidence was presented to the effect that any of the parties had been drinking in Columbus. Nor were any beverage containers or liquor bottles found in the car or at the scene of the accident. Thus, the jury could not reasonably infer, as was held in Shirley the jury could infer, that the driver of the vehicle voluntarily created the conditions which led to the accident.
Although we think this case falls within the ambit of GriffinIII, supra, it was suggested in that case that the heavy load the truck was carrying may have been a contributing factor to the accident. While there was no heavy load in the case at bar, the reason the driver failed to negotiate the curve was not determined, just as the reason the truck driver in Griffin III
failed to negotiate the curve was not ascertained. There was, however, evidence in Shirley as to why the driver failed to negotiate the curve; she voluntarily entered the curve at a wanton speed. In sum, the reason the driver in Shirley failed to negotiate the curve was definite and fixed. The reason the driver in the case at bar, and in Griffin III, failed to negotiate the curve was left to speculation and conjecture. Such speculation and conjecture cannot support a verdict of wantonness.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.