# Southern Bell Telephone & Telegraph Co. *v.* McTyer.

*Action against Telephone Company to recover Damages for Personal Injuries caused by Lightning.*

1. *Telephone companies; liability for leaving wires in building after telephone removed.*—Where a telephone company originally carried into a store, where a mercantile business was being carried on, its wires for the purpose of equipping and maintaining a telephone in said store to supply the service of the owner, but at the latter's instance the service had been discontinued and the telephone instrument removed, and the company instead of then removing the wires merely cut them loose from the instrument and twisted their ends together, and left them hanging in the building so that atmospheric electricity striking such wires along their course on the outside is inducted into the building and there discharged to the peril of persons and property therein, such telephone company is liable in damages for whatever injuries may result from the wires being so left, to persons or property rightfully in said building; and the duty of the telephone company to remove the wires and thereby obviate the peril was owing not only to the owner of the store but to his customers also.

2. *Liability of telephone company for leaving wires in building after removal of telephone; sufficiency of complaint.*—In an action against a telephone company to recover damages for

[Southern Bell Telephone & Telegraph Co.' v. McTyer.]

personal injuries, a complaint which avers that the defendant originally carried its wires into a store where a mercantile business was being carried on, and with such wires equipped and maintained a telephone for the service of the owner, and at his instance the service had been discontinued and the telephone instrument removed, but the defendant instead of then removing its wires merely cut them loose from the instrument, twisted their ends together and left them dangling in the building, and that during a storm lightning struck the wires along their course on the outside and was inducted into the building, and being discharged from said wires struck the plaintiff, who was a customer in said store, thereby inflicting the injuries complained of, states a good cause of action, and is not subject to demurrer, although it does not characterize the failure of the defendant to remove said wires from the building as negligence.

3. *Pleading and practice; where error in ruling upon demurrer to count of complaint without injury.*—In a civil action where one of the several counts of the complaint states a good cause of action, and upon the evidence introduced the plaintiff was entitled to the affirmative charge under such count, error of the court in overruling a demurrer to another count of the complaint is without injury to the defendant.

4. *Action against telephone company for injuries resulting from lightning; sufficiency of plea.*—In an action against a telephone company to recover damages for injuries alleged to have been sustained by reason of lightning striking defendant's wires along their course on the outside, and being inducted into a store where a mercantile business was being carried on and there discharged, striking the plaintiff and inflicting the injuries complained of, where it is averred in the complaint that the telephone wires were originally carried into said store for the purpose of equipping and maintaining a telephone for the service of the owner, but at his instance the service had been discontinued and the telephone removed, and the company instead of removing the wires merely cut them loose from the instrument, twisted their ends together and left them hanging in the store, and that the plaintiff was struck by lightning while in said store as a customer, a plea which avers that said wires were left in said store with the consent of the owner presents no defense to the action; since the defendant owed a duty to remove the wires not only to the owner of the store but to his customers as well.

5. *Same; same.*—In such an action, pleas which aver that the defendant did all that could be done to obviate the danger of

[Southern Bell Telephone & Telegraph Co. v. McTyer.]

the wires being in the store, presents no defense to the action and are demurrable.

6. *Action for personal injuries; when general affirmative charge properly refused.*—In an action to recover damages for personal injuries, where there is evidence tending to prove the injury and the causal connection between the wrong complained of and the injury sustained the general affirmative charge requested by the defendant is properly refused.

7. *Same; same; when error in refusing general affirmative charge without injury.*—In an action to recover damages for personal injuries, where under the evidence adduced the plaintiff is entitled to the general affirmative charge under one of the two counts of the complaint upon which the trial was had, error on the part of the court in refusing to give the general affirmative charge in favor of the defendant as to the other count of the complaint is wi'hout injury to the defendant.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. A. A. EVANS.

This action was brought by the appellee, Miss Lizzie McTyer, against the appellant, the Southern Bell Telephone & Telegraph Company, to recover $2,000 damages for being struck by lightning alleged to have been caused by the acts of defendant in the maintenance of its telephone wires.

The complaint contained six counts. Demurrers were sustained to the first, second, third and fifth counts. The sixth count was in words and figures as follows: "6. Plaintiff claims of defendant two thousand dollars for damages for that defendant is a corporation, owning and operating a public telephone line and system in the city of Eufaula, Alabama, and vicinity, for many years past, and down to the present time, and it became and was the duty of defendant to manage, use, adjust and place its wires and other appliances so as to minimize the danger therefrom to the public; that prior to June 30th, 1900, defendant extended certain of its metallic wires into a certain store house building situated in the open country at the intersection of two much travelled public highways leading to and from said city; said building was on said date, and for a long time prior thereto, a public building, kept open to the public and occupied by the proprietor for the sale of goods, wares

and merchandise to the public, into which the public were invited and many persons resorted, all of which the defendant well knew or might have known by use of ordinary diligence; that defendant ran its said wires a long distance overhead in air, attached to poles set in the ground about 30 feet high, in the manner of telegraph poles, into said building, and left said wires without any protective device at their ends; the ends of said wires having been left by defendant hanging from the inside of the wall of said building, at or near a much frequented part of said building and reaching to within about five feet of the floor thereof; that said wires being among the best known conductors of electricity in general use, and the said line of poles and wires being peculiarly and frequently subject to lightning strokes, the said wires run into said building as aforesaid, formed an attractive pathway for the conduct of an electric current from the clouds or air into said building in force sufficient to injure or kill persons therein, especially during thunder or rain storms, which are of common occurrence in southeast Alabama during the summer months; and said defendant, with knowledge of the facts above stated, left said wires running into and suspended inside said building in manner and place aforesaid for a long time prior to, and on June 30th, 1900, and for a considerable time after said date, there being no use for said wires remaining inside said store, and defendant being under no obligation to keep them in said store for a long time prior to or on said date; and defendant could have taken said wires entirely away from said building or have moved the ends to a point outside the building, and fastened said ends together around an insulator, thereby preventing said current from passing upon or into the said building, all of which defendant well knew; that on June 30th, 1900, plaintiff, while in said building on business with the proprietor thereof, the same being then open to the public as aforesaid, was struck with great force and violence by a bolt of lightning which came over said wires from the outer air and hurled against her person from, by and through the said wires of defendant and from the ends thereof suspended as aforesaid inside said building, whereby plaintiff was greatly injured in her eyes, back,

limbs and side, from which injures she has suffered and still suffers much physical pain, and on account of which she has been put to great expense for medical attention and treatment, and suffered and still suffers much impairment, and been rendered and remains unfit to perform her household and other duties, to her damage as aforesaid, wherefor she brings suit."

The fourth count was substantially the same as the sixth count, except in said count it was averred that defendant maintained a wire in the store of said Thomas, and left said wire without any protective device hanging inside on the wall of said building; and with the further exception that it was averred in said fourth count that on June 30th, 1900, when the plaintiff was struck by lightning, she went into the store of said Thomas by the permission of the proprietor, seeking refuge in said building from an approaching storm.

The defendant separately demurred to the fourth and sixth counts upon many grounds, which may be summarized as follows: 1. Because said counts fail to allege that defendant unlawfully allowed its wires to remain exposed in the storehouse. 2. Said counts allege no facts showing that defendant owed a duty to plaintiff not to expose the ends of its wires in said store. 3. Because said counts fail to allege that defendant was guilty of the breach of any duty towards the plaintiff in allowing the ends of its wires to remain exposed. 4. Said counts fail to allege any facts showing wherein there was any negligence on the part of defendant in leaving the ends of its wires exposed. 5. Said counts do not allege any facts showing that the alleged negligence of the defendant was the proximate cause of the plaintiff's injures. 6. Said counts fail to allege that there was any unlawful occupancy of said store by the defendant with its wires. 7. Said counts fail to allege any fact showing that defendant was negligent in any manner, which was the proximate cause of plaintiff's injuries. 8. Said counts fail to allege any facts showing that defendant had no legal right to place and keep its wires in said storehouse. 9. Said counts fail to allege any facts showing that defendant was negligent in the manner in which it placed or left its wires in said storehouse.

These several demurrers to the fourth and sixth counts were overruled, and thereupon the defendant pleaded pleaded the general issue, and four special pleas. Plea numbered 3 was, however, subsequently withdrawn. The remaining special pleas were as follows: "2. The defendant, at the time of the alleged injury to plaintiff, had permission of E. M. Thomas, the owner of the building described in the complaint, to leave its wires disconnected from any telephone instrument in said building, and said wires were there by his consent and permission.".

"4. For further plea, that at the time of the alleged injury to plaintiff, there were two connected wires from its central office in Eufaula to the storehouse mentioned in the complaint, one of which was erected for the purpose of telephonic communication, and the other for the return of the current to the ground wire at or near its central office; that this system of grounding the current and wires is the best known system, and acknowledged by experts to be the safest plan for the arrest and conducting thereof to the ground of electric currents on wires, and that when the telephone instrument was taken out of said storehouse prior to the alleged injury, the second wire, or what is usually called the return or ground wire, was also left in said building, and the same has remained in said building until after the alleged injury to plaintiff.

"5. For further answer, that, at the time of the alleged injury to plaintiff, there were two connecting wires from its central office in Eufaula to the storehouse mentioned in the complaint, one of which is commonly known as a return or ground wire, and which were connected at or near said central office with the ground; that this system of grounding the current on wires is the only feasible and practical way of conducting a current to the ground, and is superior to any covering that may be placed on wires, or the ends thereof, in preventing the escape of the current otherwise than directly to the ground from the wires, and is such as has been adopted by a large majority of the best conducted and regulated electrical companies."

To the second plea the plaintiff demurred upon the grounds that the permission of E. M. Thomas, the pro-

prietor of the store, did not justify the negligence of the defendant in leaving the wires in the building as set forth in plaintiff's complaint.

To the fourth plea plaintiff demurred upon the following grounds: "1. Said plea fails to show that the alleged return or ground wire was in any manner connected with the wire from which the current is alleged to have been conducted to plaintiff's person.  2.  Said plea fails to show that said ground wire was attached to or connected with the wire or wires complained of by plaintiff so as to carry away electricity brought into said store building by the wire or wires complained of by plaintiff. 3.  Said plea fails to show that the arrangement set out therein would be a fit and apt means of preventing the passage of an electric current from the ends of the wires in said storehouse, as is set out in the complaint, upon or against the persons who might be in the storehouse."

To the fifth plea plaintiff demurred upon the following grounds: "1.  Said plea fails to show that the ground wire referred to was connected in any manner with the wire or wires in said storehouse, which are alleged to have caused the injury to plaintiff.  2.  Said plea fails to show that said ground wire was attached to or connected with the wire or wires complained of by plaintiff so as to carry away electricity brought into said store building by the wire or wires complained of by plaintiff.  3.  Said plea fails to show that the arrangement set out therein would be a fit and apt means of preventing the passage of an electric current from the ends of said wires in said store house, as set out in the complaint, upon or against the persons who might be in the store house."

These demurrers to the special pleas were sustained. To each of which rulings the defendant separately excepted.  Trial was had and issue joined upon plea of the general issue.

The plaintiff introduced evidence tending to show that one E. M. Thomas kept his store about two miles from Eufaula; that some time prior to June 30th, 1900, he had caused the defendant to put a telephone in his store, which was connected with the central office in Eufaula, but that prior to June 30th, 1900, he had the telephone

taken out; that the representative of the defendant who took the telephone out did not take the wires out of the building, but left the wires in the building; that after cutting off the wires from the instrument, he twisted the wires together and left them hanging on the wall; that when this was done Thomas asked the inspector of the defendant who took out the telephone, if it would not be better for him to take out the wires, and that upon the in- spector saying there would be no danger he, Thomas, said no more; that on June 30th, 1900, the plaintiff came into the store of said Thomas to make a purchase; that while she was there a rain storm came up; that she took a seat in the store four or five feet from where the defendant's telephone wires were hanging from the wall; that although plaintiff knew there had been a telephone in the building, she was not aware that the wires were hanging there; that during the storm a bolt of lightning ran down the wires and struck the plaintiff, causing the injuries complained of. Several witnesses described the striking of the plaintiff by the lightning.

The evidence of the defendant tended to show that in the construction of its telephone connections it had em- ployed the best methods; that there were two wires run- ning to the store of Thomas, one of which was the return current or ground wire, which was the best way of con- structing it; that if a current of electricity was sufficient- ly strong to jump five feet away from a telephone wire, it would fuse the ends of the wire or split them into threads; that the wires in the store of Thomas were ex- amined after the plaintiff was alleged to have been struck by lightning, and it was found that they were smooth as though they had just been cut.

The defendant requested the court to give to the jury seven written charges, and separately excepted to the court's refusal to give each of them asked. The first, second and third of these charges were as follows: "(1.) If the jury believe the evidence, they must find for the defendant. (2.) If the jury believe the evidence, they must find for the defendant on the fourth count of the complaint. (3.) If the jury believe the evidence, they must find for the defendant on the sixth count of the complaint." Under the opinion on the present ap-

peal it is unnecessary to set out at length the fourth,. fifth, sixth and seventh charges.

There were verdict and judgment for the plaintiff, assessing her damages at $1,000. Defendant appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

GEORGE H. FEARONS, J. M. FALKNER and RAY RUSHTON, for appellant.—It is a cardinal rule that a complaint or declaration to recover damages for personal injuries should proceed upon a definite thory, either of willful injury or negligence. If an immediate injury has been inflicted intentionally or wilfully, or the injury resulted from the defendant's wrongful act, the proper remedy is by an action of trespass. But when the injury is caused by carelessness or negligence, there is a mere non-feasance, and although the injury be immediate, ordinarily the remedy is by an action of trespass on the case. There are no allegations in the fourth and sixth counts of the complaint that defendant had any control over the electric current which gave plaintiff the alleged shock, and it therefore seems that the pleader intended to declare in a special action of trespass on the case. If so, they should set forth a breach of duty imposed on the defendant by contract, or the breach of an obligation of law which the defendant owed to the plaintiff.—*Moore v. Appleton*, 26 Ala. 663; *M. & O. R. R. Co. v. Williams*, 53 Ala. 690; *M. & M. R. R. Co. v. Crenshaw*, 55 Ala. 556; *Ensley Ry. Co. v. Chewning*, 93 Ala. 24.

The allegations of the fourth count show that plaintiff was, at most, a mere licensee, if not a trespasser, in the storehouse. She went in to get out of the wind and rain. Admitting, for argument, that defendant was occupying the building with its wires and was responsible, as to the wires, in the same manner as if the owner of the building, the plaintiff, accepting the shelter of the house, assumed the risk of its safety, and defendant owed her no duty except that of abstaining from any positive wrongful act which might result in her injury.—*Ensley Rwy. v. Chewning*, 93 Ala. 24; *Woodruff v. Bowen*, 22 L. R. A. 198; Thompson of Neg., 1244; *Gillis v. Pa. R. R. Co.*, 98 Am. Dec. 317; *Ill. C. Rwy. Co. v. Godfrey*, 22

Am. Rep. 112; *Butler v. Daniels,* 27 L. R. A. 512; *Ritz v. Wheeling,* 43 L. R. A. 148; *Losee v. Buchannan,* 51 N. Y. 476.

Injury does not raise a presumption of negligence. Defendant was not an insurer of plaintiff's safety.—*Mary Lee C. & R. R. Co. v. Chambliss,* 97 Ala. 171; *McDonald v. Street Rwy. Co.* 110 Ala. 161; *G. P. Rwy. v. Davis,* 92 Ala. 307; *Seaboard v. Woodson,* 94 Ala. 143; *H. Ave. & B. R. R. Co. v. Dusenberry,* 94 Ala. 413.

We insist that charges 1, 2, and 3, which are affirmative charges, should have been given for the defendant. The testimony was without conflict and from it no reasonable man can say that it shows that defendant did otherwise in the conduct of its business than any reasonable and prudent man would have done under like circumstances. There was no evidence that anything could have been done to confine the lightning to the wires. Plaintiff's own expert witness testified that there was no practical way of doing so. He does not give us one bit of light on what could have been done to protect the ends of the wires in such a manner as would have avoided plaintiff's injury. Unless the court is prepared to say that it is negligence to leave a wire running from the outside of a building to the inside, then there was no evidence here of any negligence. A causal connection must be shown between negligence and injury. *Thompson v. L. & N. R. R. Co.,* 91 Ala. 496; *Bromley v. B. M. R. R.,* 95 Ala. 397; *Wes. R. R. Co. v. Mutch,* 97 Ala. 194; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368.

SWANSON & CLAYTON, *contra.*—The counts of the complaint upon which trial was had were sufficient to state a cause of action. These counts are the legal equivalent of saying that appellant was negligent in leaving its wires at the place and in the condition described, and that the negligence was a violation of duty to any person who might lawfully be in the store during a thunder storm.—*Sou. Wes. Tel. & Tel. Co. v. Robinson,* 50 Fed. Rep. 810. The averment is that there was no need or use for appellant to leave the wires in the storehouse, and they ought to have been taken out or some efficient

protective device arranged.   The failure to do either was
the neglect of duty of which complaint is made.   In this
connection, it is well to notice that the allegation of
there being no use or need for the wires in the store-
house was one of fact.   It was introduced into the com-
plaint to satisfy the rule, that what would not be a negli-
gent act to the public, if in doing or permitting it, appel-
lant were discharging a duty it owed to some other per-
son, would be negligent if at the time of the act no con-
travening duty rested upon it.—*East Tenn., Va. & Ga.
R. R. Co. v. Bayliss*, 74 Ala. 150; *Matson v. Maupin*, 75
Ala. 312.

The plaintiff was entitled to the general affirmative
charge.   The proximate cause of the plaintiff's injuries
was the defendant's wires.   The wires having been left
in the store, and every fact averred and shown the pre-
sumption of negligence arises from the injury as shown
to the plaintiff, who was lawfully in the store.—*Gri/".th
v. New England Tel. & Tel. Co.*, 72 Vt. 441; s. c., 52 L.
R. A. 919; *Joyce on Electricity*, 453; *Jackson v. Wiscon-
sin Telephone Co.*, 88 Wis. 243; *Brown v. Edison Elec-
tric Illuminating Co.* (Md.), 46 L. R. A. 475.

McCLELLAN, C. J.—These may be said to be familiar
facts in physics and, therefore, within the common knowl-
edge of mankind, and within the judicial knowledge of
courts:   That atmospheric electricity, or lightning, is
frequently discharged from clouds and passes to the
earth; that metal wires strung in the air are good con-
ductors of electricity, much better than the air; that
animal bodies, the bodies of human beings among the
rest, are also better conductors than the air or than
wood; that electricity so discharged in the vicinity of
such wires is liable and apt to pass into them and along
them to their ends, and thence through the best conduc-
tor at hand into the earth; that if a human body is in
contact with the end of the wire, the current will pass
through it to the ground, and that though not in actual
contact with the end of the wire whence the current
must go to the ground, but near to it, the current instead
of passing through the air to the ground will seek the

better conductor of the body, pass through the air to it and through it to the earth. Of course, the higher the wires extend, the nearer to the point of discharge in the air, the greater the likelihood that the current will pass into them, and the greater the extent of the wires horizontally, the more danger there is of receiving and carrying such electric currents. It may also be said to be common knowledge that where two wires are strung near to each other, within a foot or two, on poles through the air, after the manner of telephone and telegraph wires, there is a likelihood or liability that lightning in its descent from the clouds will strike and follow both of them to their ends, unless diverted by other more attractive conductors, and must necessarily then pass from them to the earth through the best conductor then in its general pathway.

The business of maintaining a telephone system by means of transmitters and receivers, and of poles extending many feet in the air with wires strung upon them and extending for the transmission of words into houses public and private, is recognized as a legitimate business. It is, too, a business of a public or *quasi*-public nature, in that those engaged in it in a town or city or given locality and using public streets and roads for their lines of poles and wire may be said to be under a duty to supply telephone service within such territory, to all persons who desire it and pay for it, so that a system of lines and instruments established in a community in a sense meets a public demand and conserves public convenience. If by the exercise of such reasonable precautions as a man of ordinary care and prudence would exercise in respect of such a dangerous agent, injuries to persons and property from the conduction along the wires and into houses of currents of atmospheric electricity may be avoided, it is the duty of companies engaged in this business to employ devices and appliances to that end. If the danger cannot be wholly avoided, due care should be taken to minimize it; and if such care is taken and there still inheres in the operation of the system a modicum of unavoidable peril to persons and property, its consequences are to be risked and submitted to in consideration of the conservation of public

convenience to which they are necessarily incident. The business being a legitimate one, in other words, though involving peril to others, its prosecution with the care that a man of prudence would exercise in view if its character would not entail liability for injuries which may result notwithstanding the exercise of such due care. The operation of a railway is attended with danger to the people which cannot always be guarded against; but being a legitimate business and conducive to the convenience of the public, its operation is not wrongful, it is not a nuisance; but if a railway were constructed and maintained and operated for no good purpose and subserved no proper end, it would be a nuisance and its operators would be liable even for injuries unavoidably inflicted in its operation. And so, to take an example from our own decisions, the driving of cattle through a frequented thoroughfare may be attended with more or less danger to persons using it, but their owner has a right to drive them there in the prosecution of his business if he exercise due care to avoid injury to others, and exercising that care he will not be responsible if injury results notwithstanding, on the principle that "for the convenience of mankind in carrying on the affairs of life, people, as they go along public roads, must expect or put up with such mischief as reasonable care on the parts of others cannot avoid."—*Matson v. Maupin & Co.,* 75 Ala. 321, 315. But if a man without occasion therefor turn vicious animals into the street or negligently allow them to be in a street, and injury results, he will be liable though he be guilty of no wrong or negligence while they are in the street. And the reason is plain and the same in both the instances given: The presence of the dangerous thing is not justified by any consideration of public good or convenience, its being there is itself a wrong. And so it is and for the same reason with lines of telephone wire. The only justification for their being carried into a building and maintained there is the telephone service thus supplied by means of them. If they are put there not for that purpose but for the mere convenience of the telephone company and allowed to be in such condition as that persons and property in the building are liable to be injured by lightning gather-

ed and brought into the building by them and there discharged, their mere presence is a wrong. So when they were originally carried into the building and equipped and maintained to supply the service to the owner, but at his instance the service has been discontinued and the instruments removed, and the company instead of then removing the wires, merely cuts them loose from the instrument, twists their ends together and leaves them thus dangling in the building so that atmospheric electricity, striking them anywhere along their course on the outside, will be inducted into the building and there discharged to the peril of persons and property, this is an unpalliated wrong on the part of the company: It is the creation and maintenance of a dangerous situation without that warranting occasion for it which may exist when the wires are in use—without any occasion whatever in fact; and the company is liable in damages for whatever injuries may result to persons and property rightfully on the premises.

The facts averred in the 6th count of the complaint bring the case at bar within the category last stated. The defendant had strung its wires for a mile or more to and into the storehouse of one Thomas, and had there attached them to a telephone instrument for the purpose of supplying him with its telephonic service, had supplied him for a time and until he made known to them that he did not desire the service longer and requested the company to take out its instrument. This the company at once did, but against the suggestion, not to say protest, of Thomas, the defendant failed to take its wires out of the house, but, cutting them loose from the instrument, twisted their ends together and left them hanging in the store. A mercantile business was being carried on in the place, and, of course, the public were invited and were expected and had the right to be in there to make purchases of Thomas' wares. In view of the known capacity of these wires to collect and carry dangerous currents of atmospheric electricity into the store and there discharge them to the deadly peril of persons in there at the time, and in view of the total absence of any occasion for the wires to be left there at all, there can, in our opinion, be no doubt that the company owed

a plain duty not only to Thomas but also to his customers to remove the wires and thereby to obviate this peril to him and to them. Nor was there any excuse or palliation for its failure to perform this duty. Its remission of it was a positive wrong committed by defendant's servant who removed the telephone and twisted up and left the wires. No man of ordinary care and prudence would have so acted. There is not room for two reasonable conclusions as to the character of the act in respect of negligence *vel non*. It was negligence *per se*, and to be so declared as matter of law. The 6th count of the complaint, therefore, though it does not in terms characterize this failure of plain duty on the part of the defendant as negligence, avers facts which constitute negligence. The duty was owed to the plaintiff on its averment. The negligence of it resulting in her injury is actionable by her. The negligence is alleged and also her injury in consequence of it. The count sufficiently stated a cause of action. The demurrer to it was properly overruled.

The averments of this count showing defendant's said duty, that it was a duty which defendant owed the plaintiff and defendant's neglect to perform were, considering the evidence adduced in connection with the facts to which we have adverted as being within the common knowledge of the court and jury, proved beyond controversy and adverse inference. So far as count 4 differed from count 6 in its averments, the proof failed to establish count 4, but did without conflict establish count 6; so that upon these points of difference—which were as to the number of wires running into the store and the occasion of plaintiff being there — the plaintiff was entitled to the affirmative charge under count 6; and it follows that if the court erred in overruling the demurrer to count 4, the error was without injury to the defendant.

The demurrers to plea 2 were properly sustained. The defendant owed the duty to remove the wires not only to Thomas, but to Thomas' customers as well, and his mere consent that they might be left there was no defense to plaintiff's action.

[Southern Bell Telephone & Telegraph Co. v. McTyer.]

It being defendant's duty to remove the wires, it is no defense to this action, sounding in damages for injuries resulting from their being negligently allowed to remain there, that defendant did all that could be done to obviate the danger of their being there. The court, therefore, did not err in sustaining demurrers to pleas 4 and 5.

The duty to the plaintiff being alleged and proved, as also defendant's failure to perform that duty, and the proof being without conflict, the only question for the jury, assuming that they believed the evidence as to the wires being left in the store under the circumstances detailed before them, was whether these wires inducted atmospheric electricity into the store and discharged the current upon the person of the plaintiff and whether she was injured thereby. To say the least, the evidence was overwhelming, though not perhaps to the exclusion of all ground for a contrary inference, to the establishment of the injury and of the causal connection between the wrong and it. It follows that the court properly refused to give the general affirmative charge, and the affirmative charge on count 6 for the defendant. For reasons given hereinbefore in connection with what is said last above the refusal of the affirmative charge on count 4 involved no injury to the defendant.

Having, as above declared, reached the conclusion that the plaintiff was entitled to the affirmative charge on the question of negligence, it is unnecessary to discuss the refusals of the court to give charges 4, 5, 6 and 7.

We find no ground for reversing the judgment in the record, and it is affirmed.