280 So.2d 541

**GENERAL TELEPHONE COMPANY OF ALABAMA, a corporation,**

v.

**Lucy R. CORNISH, Administratrix of the Estate of Ina Lucille Riley, Deceased.**

S.C. 199.

Supreme Court of Alabama.

July 5, 1973.

Rehearing Denied Aug. 2, 1973.

A. A. Smith, Hartford, Alto V. Lee, III, Dothan, for appellant.

Truman Hobbs and Albert W. Copeland, Montgomery, James W. Kelly, Geneva, for appellee.

**HARWOOD, Justice.**

This was an action for wrongful death filed by Lucy Cornish, as administratrix of the estate of Ina Lucille Riley, against General Telephone Company, in the Circuit Court of Geneva County, Alabama.

The complaint consisted of one count charging that the defendants, General Telephone Company and X Corporation, a fictitious defendant, were guilty of negligence in the erection, maintenance and installation of telephone service so as to permit the passage of lightning through the telephone system into the home of plaintiff's intestate, who was killed as a proximate result of such negligence.

Evidence shows that the decedent, Mrs. Riley, was talking on the telephone in her home a few miles from Hartford, Alabama, at about 8:00 P.M., on the evening of June 17, 1968. Within a few minutes of the beginning of her conversation on the telephone, lightning struck a tree approximately 170 feet from her home. The path of the lightning could be traced by the peeling of the bark down the tree and out a limb which was in close proximity to the telephone wire serving the Riley home.

When the lightning struck, Mrs. Riley's husband was in the kitchen. Upon hearing the noise from the lightning, he hurried into the room where Mrs. Riley had been using the phone and found her lying on the floor dead, with the telephone receiver hanging from the phone.

Mrs. Riley had been talking with her sister in Donifay, Florida who testified that she heard an. explosion and the telephone went dead.

Testimony was given to the effect that the deceased was sixty-nine years of age, active, and in general good health.

The plaintiff's evidence was directed toward establishing the negligence of the defendant telephone company by showing that the grounding system for the telephone in the Riley home was improperly installed by the defendant, and was unsafe.

As a witness for the plaintiff, Bud Hagler, an employee of the defendant, who was charged with the responsibility of installing and maintaining the telephone in the Riley home, testified that the grounding was improper and violated company instructions as to proper grounding. These instructions were given at the company school for installation and maintenance trainees and were similar to the provisions of the National Electrical Code which required a multiple ground. A multiple ground was defined as one which is connected to the water and electrical systems of the home serviced as well as to a metal rod driven in the ground. The witness stated that the requirement of a multiple grounding was to reduce the possibility of lightning injuring anyone using the telephone. It would take one man about one hour to install a proper ground.

Further testimony was given by another company employee, called by the plaintiff, that the cost of installing a proper ground would be approximately ten to fifteen dollars.

As to the condition of the telephone over which Mrs. Riley was speaking, there was

evidence that it was replaced shortly following her death due to a short circuit and a tear in the membrane within the receiver. The evidence also showed that the phone service in the area was disrupted for some time during the evening of Mrs. Riley's death.

Two witnesses for the plaintiff, who qualified as experts in the field of electricity, testified that they had individually administered tests to the telephone ground system in the Riley home. Both witnesses stated that they found the resistance of the telephone ground insufficient based on the requirements given in the National Electrical Code.

In defense, the defendant presented testimony of a witness who had conducted a similar test and achieved a different result. This witness also stated that certain synthetic fibers within the telephone receiver were undamaged in his opinion.

Defendant also presented testimony to the effect that the telephone lines were strung on REA electrical poles and that these poles were properly grounded.

The District Attorney of Geneva County testified on behalf of the defendant and stated that the report he received from Dr. Rehling, State Toxicologist, on the autopsy of Mrs. Riley, stated that she died of natural causes and that he had received no further communication from Dr. Rehling advancing a different theory.

At the close of the evidence the jury returned a verdict for the plaintiff and assessed damages at $150,000.00, and judgment was entered pursuant to this verdict.

Defendant's motion for a new trial being denied an appeal was perfected to this court from both the judgment and the order denying the motion for a new trial.

■ Appellant's assignment of error No. 1 asserts as error the refusal of the court to give the general affirmative charge requested in writing by defendant. In support of this assignment, defendant argues that the complaint named as defendants "General Telephone Company of Alabama, a Corporation, and X Corporation, a fictitious defendant, whose name is otherwise unknown to plaintiff but which will be substituted by amendment when discovered," and notwithstanding this averment the plaintiff failed to amend her complaint so as to strike X Corporation.

■ In Roberts Construction Co. v. Henry, 265 Ala. 608, 93 So.2d 498, there were multiple defendants and a verdict was returned against a sole defendant. This court wrote:

"There was no improper joinder of Count one as amended under allegations that the plaintiff was injured by the negligence of the defendants. There is no doubt that where several defendants are joined in an action, the plaintiff is entitled to go to the jury as to that defendant against whom he has made out his case, although a directed verdict may be ordered as to the others. § 139, Title 7, Code of 1940."

In Lovelace v. Miller, 150 Ala. 422, 43 So. 734, this court stated:

" * * * Going back to Chitty on Pleading, we find the law stated in the following language: ' * * * Where in point of fact and of law several persons might have been guilty of the same offense, the joinder of more persons than were liable, in a personal or mixed action in form ex delicto, constitutes no objection to a partial recovery and one of them may be acquitted, and a verdict taken against the others.' * * * 'In actions ex delicto a joint liability need not be proved, and consequently a misjoinder of defendants will not defeat a recovery against any or either proved guilty.' "

In Southern Ry. Co. v. Arnold, 162 Ala. 570, 50 So. 293, this court said:

"It is a well-settled rule of law that in actions of tort against two or more defendants jointly, where the proof fails as to any one, a verdict may be rendered against the other or others as to whom the proof is sufficient without thereby in law constituting a variance."

At 53 Am.Jur., Trial, Sec. 1040, it is set forth:

" * * *  But if in a suit against more than one defendant some defendants are not served, and have not otherwise made themselves subject to the jurisdiction of the court, as by entering a voluntary appearance, or have been dismissed during trial, or if it is apparent from the issues made by the pleadings that a recovery is not sought against all the defendants, a verdict 'for plaintiff' will not be construed as one against the defendants who are not before the court or against whom no recovery is sought."

In an annotation to be found in 47 A.L. R.2d 800, at 810, is the following statement:

"The holdings of the courts are based on two lines of reasoning used either singly or combined. One line of reasoning is to the effect that the verdict is unambiguous and clearly shows that it was meant to apply only to those defendants who were properly before the court, while the other line of reasoning refers to the lack of standing of the defendant or defendants against whom the verdict was rendered to complain about the non-inclusion of the defendant who had not been served with process."

In the instant case only one defendant was served. He had his day in court. It was this defendant against whom the plaintiff made out a case. The record resolves any uncertainty as to this and no prejudice resulted to the appellant from the fact that the fictitious defendant was not struck from the complaint.

Assignments of error Nos. 3, 4, 5, 6, 7 8, 9, and 10 relate respectively to the action

of the court in giving at appellee's request written charges 1, 2, 3, 5, 7, 9, 11, and 12. From our examination it appears that all of the charges given at appellee's request are correct statements of legal principles applicable to the issues of this case, and were therefore properly given.

As to Charge 1, see Motor Terminal & Transportation Co. v. Millican, 244 Ala. 39, 12 So.2d 96; as to Charge 2, see Alabama Power Co. v. McIntosh, 219 Ala. 546, 122 So. 677; as to Charge 3, see Motor Terminal & Transportation Co. v. Millican supra; as to Charge 5, see Welch v. Evans Bros. Const. Co., 189 Ala. 548, 66 So. 517; as to Charge 7, see Airheart v. Green, 267 Ala. 689, 104 So.2d 687; as to Charge 9, see Southern Bell Telephone & Telegraph Co. v. McTyer, 137 Ala. 601, 34 So. 1020; as to Charge 11, see Alabama Power Co. v. McIntosh, supra; and as to Charge 12, see Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300.

Under assignment of error No. 27, the appellant argues that the lower court erred in overruling its motion for a new trial on that ground asserting the excessiveness of the damages awarded.

Damages in wrongful death action are penal in nature and are largely within the discretion of the jury. In Airheart v. Green, 267 Ala. 689, 104 So.2d 687, this court said:

" 'The damages are entirely punitive, imposed for the preservation of human life * * * the amount * * * rests largely in the discretion of the jury. However this discretion is not an unbridled or arbitrary one, but "a legal, sound and honest discretion." * * * In arriving at the amount of damages which should be assessed, the jury should give due regard to the enormity or not of the wrong and to the necessity of preventing similar wrongs. The punishment by way of damages is intended not alone to punish the wrongdoer, but as a deterrent to others similarly mind-

ed'. Liberty National Life Ins. Co. v. Weldon [ante, 1957, 267 Ala. p. 171] 100 So.2d 696, 713."

It has been written so many times as to be axiomatic that where the trial court refuses to grant a new trial because he does not consider the verdict excessive, the favorable presumption attending the jury's verdict is thereby strengthened.

In the case of Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231, this court specifically spoke to the standard of care required of a public utility in its dealings with the public and stated the following:

"It is the duty of the electric company to use that degree of care commensurate with the risk and danger involved and the public has the right to assume that its high-voltage wires will not be negligently maintained."

During the trial plaintiff offered into evidence the deposition taken by defendant of Guy Purnell, a toxicologist employed by the State of Alabama. Upon the completion of the reading of the direct testimony, the defendant waived the right to read to the jury the cross examination of the witness whose direct depositional testimony had been introduced into evidence by the plaintiff. The defendant objected to the reading of the cross examination contained in the deposition stating as grounds that the plaintiff had adopted the witness as his own by reading the deposition and the plaintiff would be impeaching his own witness by reading the cross examination. Plaintiff responded that he had offered the entire deposition in evidence and the court then allowed the plaintiff to read the cross examination to the jury. The reading of the cross examination is the basis of appellant's assignments of error Nos. 11, 12, 13, and 14.

In the Code of Alabama, 1940, Recompiled 1958, Title 7, § 474(4) there is a provision for the admission of a deposition which reads:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part *or all of a deposition,* so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition, or who had due notice thereof, in accordance with any one of the following provisions * * *" (Emphasis ours.)

It would appear that this code section specifically authorizes the introduction of the entire deposition into evidence, subject of course to any objections as to evidentiary matters.

In 134 A.L.R. 212, 225, 226, the annotation speaks of cross examinations contained in depositions as follows:

"Although, as is indicated infra, III a, the introduction in evidence of a deposition by a party other than the one at whose instance the deposition was taken has been generally held to make the deponent the witness of the party introducing the deposition, it would appear, according to the comparatively few cases in which the exact point has arisen, that this fact alone is not sufficient to prevent the part [sic] introducing the deposition from introducing his own cross-examination therein, particularly if such cross-examination was otherwise proper at the time of the taking of the deposition."

The reading of the entire deposition was not error. The questions asked were proper questions for cross examination. Nowhere does it appear that plaintiff was attempting to impeach his own witness.

Appellant contends that the following questions and answers so prejudiced the jury as to require a reversal of this cause:

"Q Were you aware it was important to have a proper ground to prevent the possibility of someone being killed using the telephone, were you aware of the prior to 1968?

"A I had never heard of anybody getting killed.

"Q Have you ever heard of the Benefield boy being killed in Dothan?

"MR. LEE: I object, that is far afield.

"THE COURT: I sustain.

"Q You had never heard—

"A That's right, Benefield.

"MR. LEE: If the Court please, I move to exclude his testimony and ask the Court to instruct the jury not to consider it.

"THE COURT: I sustain the objection. Do not consider any other than this case.

"Q Do you wish to withdraw the statement that you never heard of any-body being killed talking over the telephone?

"A Yes, sir."

At this point there was a hearing outside the presence of the jury wherein the defendant moved for a mistrial stating that the question referring to the Benefield case prejudiced the jury. After discussing the matter, the court denied the motion and defendant excepted.

During plaintiff's direct examination of C. L. Smith, an employee of defendant telephone company, counsel asked the court if he may question the witness based on surprise inasmuch as the witness's answers differed from those given by the witness earlier by deposition. The court permitted the line of questioning and from that exchange came the questions set out above.

■ It is a long established rule that a party surprised by testimony of his own witness, may contradict such testimony by any legal evidence or by cross examination of the witness to refresh his recollection or to show surprise and hostility. Alabama Power Co. v. Hall, 212 Ala. 638, 103 So.

867. The range of cross examination is within the discretion of the trial court, and, unless it clearly appears that error intervened to the substantial injury of the adverse party, the ruling of nisi prius will not be disturbed upon appeal. Sowell v. State, 30 Ala.App. 18, 199 So. 900. The question appears to be a proper question to ask on cross examination. As to the answer, the court instructed the jury not to consider any other case as the defendant requested.

■ Defendant counsel next asserts that he was surprised by a change in the testimony of Dr. C. J. Rehling, state toxicologist. In his original report of the autopsy performed on the deceased, Dr. Rehling stated that the cause of death was unknown and consequently the death certificate indicated that the deceased died of natural causes.

On direct examination, Dr. Rehling testified that none of the usual symptoms of death due to natural causes were discovered during the autopsy. He further stated that it was recognized in his profession that one may be killed by lightning without leaving any evidence externally or internally. In response to further questioning, Dr. Rehling stated that a number of significant facts, such as the fact that the telephone service in the deceased person's home was disrupted and that the phone was replaced in order to restore normal service, were important factors in reaching a conclusion as to the cause of death and that he did not have knowledge of these facts at the time of his examination of the deceased. Finally the plaintiff posed a hypothetical question substantially hypothesizing the facts in evidence in the instant case and asked the doctor his opinion as to the cause of death based on the facts as hypothesized. To this question, the witness responded that his opinion would be death caused by lightning, an electrical charge through the telephone system. It does not appear that this constituted a change in testimony but rather Dr. Rehl-

ing's opinion based upon additional facts unknown to him at the time of his original autopsical report.

Defendant's assignment of error No. 22, relates to the court's refusal to allow a witness offered by appellant to testify to the fact that Dr. Rehling left the courthouse in an automobile bearing a state license plate. Appellant maintained that this testimony would disprove Dr. Rehling's testimony wherein he had stated that he was in court as an expert witness on his own time and not in his official capacity as state toxicologist. It does not appear that this testimony alone would be conclusive as to what capacity Dr. Rehling was serving simply based on the tag registration of the automobile in which he was riding. This testimony appears immaterial to any issue in this case. In Goldin v. State, 271 Ala. 678, 127 So.2d 375, this court said:

> "It is true as argued by appellant a witness cannot be impeached by contradicting him on an immaterial matter. Smith v. State, 261 Ala. 270, 73 So.2d 916."

The judgment of the lower court is due to be affirmed, and it is so ordered.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and FAULKNER, JJ., concur.