Anne Russell GILBERT, etc., Plaintiff-Appellant-Cross Appellee,

v.

The ST. LOUIS–SAN FRANCISCO RAILROAD COMPANY, Defendant-Appellee-Cross Appellant.

No. 74–1733.

United States Court of Appeals, Fifth Circuit.

June 20, 1975.

William J. Donald, Tuscaloosa, Ala., Roscoe B. Hogan, Birmingham, Ala., for plaintiff-appellant-cross appellee.

L. Vastine Stabler, Jr., W. Stancil Starnes, Birmingham, Ala., for defendant-appellee-cross appellant.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

In this diversity appeal the numerous assignments and cross-assignments which are properly presented for review reduce down to two issues: (1) whether the record contains substantial evidence so that the district judge correctly overruled the defendant's motions for instructed verdict and judgment NOV; and (2) whether the plaintiff has made the requisite showing of abuse of discretion by the trial judge in his conditioning of denial of defendant's motion for new trial upon plaintiff's acceptance of a $165,000 remittitur of punitive damages. Finding no basis for disturbance of either ruling, we affirm the remitted judgment of $60,000 in favor of the plaintiff.

Anne Russell Gilbert brought this action under the Alabama Homicide Act, Tit. 7 Ala.Code § 123 (1960), to recover for the wrongful death of her husband. The Act creates a cause of action for punitive damages in favor of the personal representative of a deceased whose death is caused by the "wrongful act, omission, or negligence" of a defendant or its agents.[1] The remedy under the Act is punitive only; the jury's monetary award is not calculated to reflect ordinary compensable items such as loss of support, funeral expenses, or perhaps loss of society. *E. g.,* Painter v. Tennessee Valley Authority, 5 Cir. 1973, 476 F.2d 943; Bonner v. Williams, 5 Cir. 1966, 370 F.2d 301; Geohagan v. GMC, 1973, 291 Ala. 167, 279 So.2d 436; Blount Bros. Constr. Co. v. Rose, 1962, 274 Ala. 429, 149 So.2d 821; Bell v. Riley Bus Lines, 1952, 257 Ala. 120, 57 So.2d 612. The purposes, instead, have been variously described as follows:

> In arriving at the amount of damages which should be assessed, the jury should give due regard to the enormity or not of the wrong and to the necessity of preventing similar wrongs. The punishment by way of damages is intended not alone to punish the wrongdoer, but as a deterrent to others similarly minded. Mobile Light & P. Co. v. Nicholas, [232 Ala. 213, 169 So. 298,] supra; Louisville & N.R. Co. v. Bailey, 245 Ala. 178, 16 So.2d 167; Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77.

Liberty National Life Ins. Co. v. Weldon, 1957, 267 Ala. 171, 186, 100 So.2d 696, 713.

---

* Of the Eighth Circuit, sitting by designation.

1. § 123. Action for wrongful act, omission, or negligence causing death.—A personal representative may maintain an action, and recover such damages as the jury may assess in a court of competent jurisdiction within the state of Alabama, and not elsewhere for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death. Such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for the wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate.

Although the amount of the damages to be awarded rests largely within the jury's discretion, *see, e. g.,* General Tel. Co. of Alabama v. Cornish, 1973, 291 Ala. 293, 280 So.2d 541, the Alabama Supreme Court has consistently emphasized that this discretion is not an arbitrary one, but a "legal, sound and honest discretion." Mobile Light & P. Co. v. Nicholas, 1936, 232 Ala. 213, 167 So. 298, 305. *Accord,* General Tel. Co. of Alabama v. Cornish, *supra,* 280 So.2d at 545; Liberty National Life Ins. Co. v. Weldon, *supra,* 267 Ala. at 171, 100 So.2d at 713. In cases in which trial courts have ordered remittiturs upon findings of jury bias, prejudice, passion, corruption "or other improper motive or cause," the Alabama Supreme Court has indulged a presumption in favor of the trial court's action. This presumption is based on the trial judge's "observation of all the witnesses who testified in the case and other incidents of the trial which cannot be reflected in the transcript and which are not available for observation by us." Airheart v. Green, 1958, 267 Ala. 689, 104 So.2d 687, 690; *see also* Birmingham Electric Co. v. Thompson, 1948, 251 Ala. 465, 37 So.2d 633. To the extent that Alabama has expressed a public policy to govern trial court remissions of damages in suits brought under that state's Homicide Act, the policy contemplates that "the amount of the verdict and the severity of the punishment are graded according to the degree of culpability." Airheart v. Green, *supra,* 267 Ala. at 693, 104 So.2d at 691; *see* Mobile Elec. Co. v. Fritz, 1917, 200 Ala. 692, 77 So. 235, 236.

The plaintiff's theory in this case was subsequent negligence, which closely parallels the doctrine of discovered peril followed by other states in our Circuit. The evidence showed that the intestate, a trespasser, was hunting on land across which the defendant railroad's right-of-way proceeded. The decedent went upon a tressel in the right-of-way, and was killed after being struck by defendant's train.

Underlying factual issues were sharply contested at the trial. The tressel was approximately 114 feet long, running north-south. The decedent had parked his pick-up truck near the northeast end of the tressel. He was struck on a clear day by a northbound train some 28 feet short of the tressel's north end, or so the jury could find from the testimony concerning the earliest evidence of bodily remains. Beyond these facts, plaintiff attempted to prove from post-accident examination of sand deposits left on the tracks that the train traveled nearly 850 feet past the point of impact before coming to a halt. South of the tressel the track takes a slight curve to the left. Members of the train crew, the only surviving eyewitnesses, testified that upon rounding the curve they first recognized the decedent as a human at a point some 500–600 feet south of the tressel's south end. The plaintiff contended by way of demonstrative evidence, based on an observation height of 12 feet (the height of vantage from the locomotive), that the crew must have recognized the intestate's figure at a point 200 to 300 feet farther south. Engineer Coffman testified that he sounded his whistle and applied the emergency brake upon first recognition. Three other railroad engineers testified on the basis of their experience that the train, traveling at 35 to 40 m. p. h., could have been brought to a complete stop within 600–750 feet. In order to account for the impact, Conductor Brown testified that the decedent was standing only 10–12 feet north of the tressel's south end when first sighted. He added that the decedent appeared to commence running northward along the tressel at the time of the sighting. Another crew member, Ballard, testified that the decedent was more nearly to the center of the tressel, standing still. Ballard's description was based on observation said to have occurred at an estimated 150–200 feet south of the tressel. Plaintiff contended that it was not until the train reached that point that the decedent became aware of its approach.

Defensively, the railroad denied negligence and asserted subsequent contributory negligence. A deputy sheriff described the tressel for the jury. Near its terminals the tressel is elevated approximately five to seven feet. Toward the center the elevation increases to 15–20 feet. Conductor Brown testified that upon first recognition of the decedent, the elevation was about five feet. This testimony was in connection with Brown's estimate that the intestate's location was 10–12 feet north of the tressel's south end. He stated that as the decedent trotted northward along the track, the crew members yelled at decedent to jump, but to no avail. Under plaintiff's version of the facts, the decedent did not realize the train's presence until a jump from the tressel would have been unsafe. This theory was based on the inference that the decedent was then near the middle of the tressel, which was based largely on the evidence that the impact occurred 28 feet south of the north terminal.

■ Although he considered the case a thin one, the district judge submitted the dispute to the jury and overruled the defendant's peremptory motions. In this the district court was correct. The issues of discovery of peril, subsequent negligence, and subsequent contributory negligence were vigorously contested as to times, places, and distances. Each side's theory was well within the parameters recognized by Alabama law. *See, e. g.,* Alabama Great Southern R.R. v. Evans, 1972, 288 Ala. 25, 256 So.2d 861; Southern Ry. Co. v. Cunningham, 1932, 224 Ala. 642, 141 So. 561; Central of Georgia Ry. Co. v. Ellison, 1917, 199 Ala. 571, 75 So. 159; Central of Georgia Ry. Co. v. Blackmon, 1910, 169 Ala. 304, 53 So. 805; Central R.R. & Banking Co. v. Vaughan, 1890, 93 Ala. 209, 9 So. 468. Likewise, the federal requirement of a conflict in substantial evidence was met with respect to each side's case. *See* Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365 (en banc). The lawsuit was properly submitted to the jury.

■ The jury returned a verdict of $225,000. Plaintiff accepted under protest a remittitur of all but $60,000, conditioned upon denial of defendant's motion for a new trial. We have jurisdiction of plaintiff's appeal from the order of remittitur. United States v. 1160.96 Acres of Land, 5 Cir. 1970, 432 F.2d 910.

■ We have carefully considered plaintiff's argument, based on Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir. 1970, 429 F.2d 1033, and more recently Bonura v. Sea Land Service, Inc., 5 Cir. 1974, 505 F.2d 665, that the remittitur abridged plaintiff's Seventh Amendment right to trial by jury. Plaintiff contends that our decisions in *Gorsalitz* and *Bonura,* which establish at least as to compensatory damages that a jury award may not be reduced below "the maximum which the jury could reasonably find" under the evidence must necessarily apply under the Seventh Amendment to purely punitive damages as well. The logical extension of plaintiff's argument would preclude a federal court from ever reducing an award of punitive damages such as those provided by the Alabama Homicide Act.

We reject the argument, for it mixes apples and oranges. Compensatory and punitive damages sometimes overlap in that both types may contain speculative elements, but they are not administrable in the same fashion. The analysis in this Circuit on remittiturs of purely punitive damages, which we think is still the law, was laid down in Curtis Publishing Co. v. Butts, 5 Cir. 1965, 351 F.2d 702, 718–19, aff'd on other grounds, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967):

> The trial judge had the duty of determining whether *as a matter of law* (a) any allowance for punitive damages could be made, and (b) what the maximum would be. * * * Upon determining (b) he had then to decide whether to grant a new trial or require a remittitur as to the excess. *The latter is a permissible course and does not infringe upon the Seventh Amendment's guaranty of a jury trial.*

In making his determination as to (b), he pursued the correct standard of keeping the verdict "within reasonable bounds considering the purpose to be achieved as well as the corporate defendant's wanton or reckless indifference to the plaintiff's rights." *Obviously, in deciding the matter the judge had to pick a dollar figure beyond which the law would not go.* He selected the sum of $400,000 as the maximum which the *law* would accept to deter Curtis from repeating the trespass or to compensate the wounded feelings of Butts.

\* \* \* \* \* \*

To have granted a new trial might appear to have been an easier way out. *But that is really no solution.* \* \* \* Georgia has prescribed the "punishment" for aggravated willful torts. *The law ought not to frustrate the vindication of that policy by an unrealistic procedure. The jury verdict, as reviewed and reduced by the trial judge, is the tort-feasor's assurance that such damages will not exceed that which the law would tolerate to achieve the Georgia objective of deterring repetition or compensating wounded feelings.*

(emphasis added and footnotes omitted).

Under the Georgia law involved in *Butts,* punitive damages were recoverable either to deter repetition of the wrong or as compensation for the plaintiff's wounded feelings. Under the Alabama statute applicable to this case, punitive damages flow from a policy of punishment, depending on the "enormity or not of the wrong," and a policy of deterrence against future similar acts by others. The Alabama cases tell us that the reduction of a jury award as a matter of policy under the Homicide Act is to be measured by the degree of culpability. As in *Butts,* a reduction which complies with the policy behind the state law which creates the very right at issue does not offend the Seventh Amendment.

■ Turning to the facts *sub judice,* the able and experienced trial judge explained his arrival at the figure of $60,-000 as the result of a detailed review of all the evidence, which he had undertaken in considering the defendant's motions for peremptory judgment. The judge also referred to the fact that the highest previous jury award in a Homicide Act case in his court had been $60,-000. The plaintiff argues that this statement only means the judge thought that the jury had given her too much money, and he was determined to do something about it. We disagree. We read the district court's order of remittitur as a reflection of his belief, based on hearing the testimony and viewing the witnesses' demeanor, that the plaintiff had a factually weak case—but not so weak as to warrant judgment for the defendant as a matter of law. The evidence was in sharp conflict, and there were strong indications that both parties to the accident were at fault. In his experience, the trial judge has seen strong cases and weak cases. He could not justify, on principles of legal policy, a jury award in this case which so vastly exceeded an earlier award in a stronger case. The plaintiff has wholly failed to demonstrate any specific abuse of discretion in the trial judge's concern with the comparative culpability of the parties, or in his reference to his experience as a judge. Indeed, it appears that his analysis was precisely the kind to which the Alabama Supreme Court would accord a presumption of correctness in an appeal from a Homicide Act trial in state court. But be that as it may. For our purposes, the precise issue is whether the remittitur was ordered in conformity with state law and the policies which the state law, which created the right, seeks to further. No showing has been made that it was not, and it appears to us that it was. Therefore, under *Butts,* the remittitur was permissible and the Seventh Amendment was not violated.

We have given careful thought to all other contentions on appeal, and they are rejected. We pause briefly to men-

tion that plaintiff's assignment of the trial court's failure to charge on wantonness is without merit, for lack of a timely objection. *See* F.R.Civ.P. 51. The judgment, as remitted, is

Affirmed.