PER CURIAM.
Because of the narrow evidentiary issue presented by this appeal, which requires our affirmance of the judgment, a detailed recital of the events surrounding this protracted litigation would serve no useful purpose. Suffice it to say that Nizah Wilson sued Dan and Lois Gray for an alleged balance due on a 1977 contract for the construction by Wilson of the Grays’ residence and for other damages allegedly resulting from the Grays’ breach of the construction contract. By way of counterclaim, the Grays alleged breach of contract and breach of warranty. The jury returned a verdict in favor of the Grays on Wilson’s claim and awarded the Grays $30,-000 on their counterclaim.
During the course of the trial, the Grays offered into evidence certified copies of 42 judgments against Wilson, dated from 1968 to 1985. The trial court’s admission of this evidence, over the objection of Wilson, forms the basis of this appeal. The trial court’s order, denying Wilson’s motion for a new trial, adequately and accurately addresses this issue:
“In the course of Wilson’s testimony, he was asked on cross-examination whether he was or considered himself to be a responsible contractor. No objection was made to this question, and Wilson answered affirmatively. If objection had been made by Wilson’s attorney to this question, the objection would have been sustained. Wilson’s character with respect to responsibility would not be admissible to show whether Wilson acted responsibly or irresponsibly in connection with the matters at issue in this lawsuit. See, e.g., Gamble, McElroy’s Alabama Evidence, § 35.01, at 61 (3d ed. 1977). As Gamble notes:
“ ‘A person’s character with respect to care or skill is not admissible as tending to show his negligence or carefulness on the occasion in suit. This is part of the general exclusionary rule on the civil side which declares that character is inadmissible for the purpose of showing that a party, on the occasion being litigated, acted in keeping with his character. This rule, for example, prevents the defendant in a civil suit from proving his good general reputation for being a careful person or from proving prior specific acts of carefulness.’
“Furthermore, a witness cannot be impeached by contradicting him on an immaterial matter. General Tel. of Alabama v. Cornish, 291 Ala. 293, 301, 280 *387 So.2d 541 (1973); Smith v. State, 261 Ala. 270, 73 So.2d 916 (1954).
“While not admissible to contradict Wilson’s statement elicited on cross-examination that he was a responsible contractor, the forty-two judgments are admissible to contradict Wilson’s statement on direct examination that he was forced out of business because of the Grays’ failure to pay him under their contract. Wilson testified as follows on direct examination by his attorney, Henry L. Pen-ick:
“ ‘Q. Mr. Wilson, what else happened to you as a result of this transaction with the Grays?
“ ‘A. Well, I got sick.
“ ‘Q. What happened to your business?
“ ‘A. I had to go out of business.
“ ‘Q. Did you suffer any other financial loss?
“ ‘A. Yes. I had to sell a farm that I had for a third of the price.
“ ‘Q. What was the necessity for selling the farm?
“ ‘A. Took money that I had borrowed in July and August in order to complete the Grays’ house, and it — in other words, everything came pushing down on me and I had to sell it in order to get some relief off of me.’
“The evidence that forty-two different persons or firms found it necessary to file suit against Wilson and obtain judgments against him for unpaid services and materials provided Wilson over a period of time beginning in 1968 and extending past the date of Wilson’s transaction with the Grays is inconsistent with and contradicts Wilson’s testimony that he was forced out of business because of his transaction with the Grays. The evidence is therefore admissible on that basis. See, e.g., Renfroe v. State, 382 So.2d 627, 631 (Ala.Crim.App.1980) [cert, denied, Ex parte Renfroe, 382 So.2d 632] (Ala.1980).
“In Renfroe, supra, the defendant Renfroe was convicted of manslaughter as a result of criminal charges asserted against him in connection with his wife’s death. On appeal, Renfroe argued that the trial court was in error in admitting the testimony of several witnesses that they saw Renfroe eating breakfast in a restaurant between 7:30 and 8:30 a.m. on the morning of his wife’s death. Renf-roe argued that this testimony was an impermissible attempt to impeach his credibility on a immaterial issue.
“Rejecting this argument, the Court of Criminal Appeals referred to Renfroe’s statement to the police that he had eaten breakfast at home with his wife and departed from home around 8:00 a.m. The coroner had testified that Renfroe’s wife died between 2:00 a.m. and 6:00 a.m. The Court of Criminal Appeals concluded:
“ ‘... The testimony of witnesses who saw appellant eating breakfast in a restaurant between 7:30 and 8:30 a.m. is therefore certainly material. It has material value, as opposed to being merely contradictory, as it is the earliest documentation by witnesses of appellant’s whereabouts on the morning of the homicide. See: Gamble, McEl-roy’s Alabama Evidence, § 156.01(3), (4) (3d ed. 1977). Thus, the trial court properly allowed the witness’s testimony-’
“In the present case now before this court, the forty-two judgments against Wilson are also material. They tend to show that Wilson was unable to pay his debts prior to his contract with the Grays and that he was not put out of business because of his controversy with the Grays.”
In summary, the trial court held that, while the challenged evidence was not admissible for the restricted purpose of impeachment, it was admissible for the purpose of contradicting the substantive evidence offered by Wilson to prove his allegation that the Grays’ alleged breach of the construction contract caused him to go out of business. We agree.
We have considered each of the other issues presented and we find no merit in any of the appellant’s assertions of error.
AFFIRMED.
*388 TORBERT, C.J., and MADDOX, JONES, SHORES and STEAGALL, JJ., concur.